ACCEPTED
15-25-00072-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/3/2025 10:25 AM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00072-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/3/2025 10:25:47 AM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AT AUSTIN

FRANCES SPANOS SHELTON,

*Appellant*,

v.

VERNON LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE SPANOS, KATHRYN NICOLE LAWRIE, AND KATHERINE LEUSCHNER,

*Appellees.*

On Interlocutory Appeal from the 414th District Court
of McLennan County, Texas, Cause No. 2024-3035-5

**REPLY BRIEF**

Kirk L. Pittard
State Bar No. 24010313
kpittard@dpslawgroup.com
Rick Thompson
State Bar No. 00788537
rthompson@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000
(214) 946-8433 (fax)

Craig D. Cherry
State Bar No. 24012419
ccherry@cjsjlaw.com
Ryan C. Johnson
State Bar No. 24048574
rjohnson@cjsjlaw.com
Scott H. James
State Bar No. 24037848
sjames@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES, PLLC
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
(254) 732-2242
(866) 627-3509 (fax)

**COUNSEL FOR APPELLANT**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities .................................................................. iv

Introduction .............................................................................1

I. The County Court at Law's Orders Are Void and the District Court Abused Its Discretion by Enforcing Aspects of the Void Orders in the Order Appointing the Receiver.....................1

    A. Fran May "Collaterally Attack" the County Court's Orders.................................................................................2

    B. This Court Has Jurisdiction to Review the County Court's Jurisdiction to Issue the Order Appointing Judge Stem to Serve as Trust Advisor............................................3

    C. The Order Appointing the Receiver Implicitly, Indirectly, or Silently Incorporates and Gives Effect to the County Court's Void Rulings.................................................4

    D. The County Court Did Not Have Jurisdiction to Issue the Orders Appointing Judge Stem to Serve as Trust Advisor.................................................................................8

        *1. The County Court Did Not Have Original Probate Jurisdiction Following the End of the Temporary Administration of Ms. Spanos's Estate* .....................................9

        *2. County Court at Law No. 1 Did Not Have Pendent or Ancillary Jurisdiction Over the Administration of the Trust Either* .................................................................11

**Page(s)**

II.   The County Court's Orders Are Void, Not Voidable, Because the Court Had No Subject Matter Jurisdiction Over the Claims Related to the Trust ........................................................16

III.  Fran Did Not Waive and Is Not Estopped from Arguing that the County Court at Law and District Court's Orders Are Void ........................................................................................20

IV.   The Order Appointing Receiver Is Not Supported by Relevant Evidence .................................................................22

    A.   No Evidence Supports the Appointment of the Receiver Under Texas Civil Practice & Remedies Code § 64.001(a)(6) ...............................................................22

    B.   There Was No Evidence Supporting the Appointment of a Receiver Under Texas Property Code § 114.008(a)(5) .................................................................23

    C.   There Was No Evidence Supporting the Appointment of a Receiver Under the General Rules of Equity .................................................................................26

V.    The District Court's Order Appointing Receiver Is Overly Broad and Violates Fran's Rights ...........................................28

Certificate of Compliance ...........................................................................31

Certificate of Service ...................................................................................32

**Cases**                                                                                    **Page(s)**

*Barton v. Buchanan*, Nos. 03–02–00596–CV, 03–02–00632–CV,
2003 WL 21939725 (Tex. App.—Austin Aug. 14, 2003, no pet.)............ 14-15

*Benefield v. State*, 266 S.W.3d 25
(Tex. App.—Houston [1st Dist.] 2008, no pet.).................................27

*Browning v. Prostok*, 165 S.W.3d 336 (Tex. 2005) ........................................ 17, 18

*Castaneda v. Chapa*, No. 13-22-00537-CV, 2024 WL 2197216
(Tex. App.—Corpus Christi-Edinburg May 16, 2024, pet. denied)...... 13-14

*Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137 (Tex. 2022) ...........................3

*Estate of Hoskins*, 501 S.W.3d 295
(Tex. App.—Corpus Christi-Edinburg 2016, no pet.)................................5, 6

*Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*,
262 S.W.3d 813 (Tex. App.—Fort Worth 2008, no pet.)...............................26

*For the Protection of S.M.*, 658 S.W.3d 876
(Tex. App.—El Paso 2022, no pet.) ........................................................ 20, 21

*Gilbreath v. Horan*, 682 S.W.3d 454, 552
(Tex. App.—Houston [1st Dist.] 2023, pet. denied)...................................27

*Goodman v. Summit at West Rim, Ltd.*, 952 S.W.2d 930
(Tex. App.—Austin 1997, no pet.) ...............................................................15

*In re D.L.S.*, No. 05-08-00173-CV, 2009 WL 1875579
(Tex. App.—Dallas July 1, 2009, orig. proceeding)................................. 17, 19

*In re Estate of Hallmark*, 629 S.W.3d 433
(Tex. App.—Eastland 2020, no pet.)............................................................13

**Cases (cont'd)**                                                                                                    **Page(s)**

*In re Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100
   (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.)................................22

*In the Interest of R.V., Jr.*, 977 S.W.2d 777
   (Tex. App.—Fort Worth 1998, no pet.) ..........................................................20

*Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150 (Tex. 2004) ....................26

*Lawton v. Lawton*, No. 01–12–00932–CV, 2014 WL 3408699
   (Tex. App.—Houston [1st Dist.] July 10, 2014, no pet.) ........................ 14, 15

*Matter of Estate of Rushing*, 644 S.W.3d 383
   (Tex. App.—Tyler 2022, pet. denied) ............................................................11

*Molinet v. Kimbrell*, 356 S.W.3d 407 (Tex. 2011)..................................................15

*Parsons v. Parsons*, 648 S.W.3d 354
   (Tex. App.—Texarkana 2021, pet. denied)............................................... 17, 18

*Peters v. Blockbuster, Inc.*, 65 S.W.3d 295
   (Tex. App.—Beaumont 2001, no pet.) ...........................................................3

*Pickens v. Pickens*, 62 S.W.3d 212 (Tex. App.—Dallas 2001, pet. denied)......22

*Schuchmann v. Schuchmann*, 193 S.W.3d 598
   (Tex. App.—Fort Worth 2006, pet. denied)....................................................13

*Solomon, Lambert, Roth & Assocs., Inc. v. Kidd*, 904 S.W.2d 896
   (Tex. App.—Houston [1st Dist.] 1995, no writ)..............................................19

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993).............20

*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860 (Tex. 2010) ........................... 16, 17

**Cases** (cont'd)                                                              **Page(s)**

*Walker v. Money*, 120 S.W.2d 428 (Tex. 1938)......................................................23

*Womble v. Atkins*, 331 S.W.2d 294 (Tex. 1960)....................................................11

**Statutes**

28 U.S.C. § 1367...........................................................................................................15

Acts 2025, 89th Leg., ch. 73 (S.B. 2034), § 1, eff. May 19, 2025. ......................23

Acts 2025, 89th Leg., ch. 956 (S.B. 17), § 2, eff. Sept. 1, 2025............................23

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(1)..........................................................3

TEX. CIV. PRAC. & REM. CODE § 64.001(a) ..................................................... 22, 23

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(3)...........................................................23

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(6)........................................... 22, 23, 26

TEX. CIV. PRAC. & REM. CODE § 64.001(a)(7)...........................................................23

TEX. ESTATES CODE § 32.001(a) ....................................................................... 9, 10

TEX. ESTATES CODE § 32.001(b) ................................................................................11

TEX. ESTATES CODE § 32.001(d)................................................................................12

TEX. ESTATES CODE § 31.002(a) ...............................................................................10

TEX. ESTATES CODE § 31.002(a)(1).............................................................................10

## TABLE OF AUTHORITIES (CONT'D)

**Statutes (cont'd)**                                                    **Page(s)**

TEX. ESTATES CODE § 31.002(b) ................................................................10

TEX. ESTATES CODE § 31.002(b)(3) ..........................................................10

TEX. ESTATES CODE § 452.051(a) ..............................................................12

TEX. GOV'T CODE § 25.0003(d) ...................................................................9

TEX. PROP. CODE § 114.008 ............................................................... 23, 24

TEX. PROP. CODE § 114.008(a) ...................................................................24

TEX. PROP. CODE § 114.008(a)(5) ..............................................................23


**Rules**

TEX. R. APP. P. 38.2(a)(1)(B) ........................................................................1

TEX. R. APP. P. 38.1(g) ..................................................................................1

TEX. R. APP. P. 38.2(a)(2) .............................................................................1


**Other Authorities**

BLACK'S LAW DICTIONARY (12th ed. 2024) ..............................................5

**INTRODUCTION**

Appellees' statement of facts is replete with allegations of wrongdoing

by Fran that are not supported by any record citations and violate Texas Rule

of Appellate Procedure 38.2. *See* Tex. R. App. P. 38.1(g), 38.2(a)(1)(B). Fran

objects to these allegations and does her best to contradict the many factual

inaccuracies in Appellees' Brief below.

Next, rather than respond to Fran's arguments in the order presented,

Appellees have disregarded Texas Rule of Appellate Procedure 38.2(a)(2)

and reordered their responsive arguments in their preferred order. *See* Resp.

Br. at 18 n.70. Appellant will reply to the arguments in the order originally

presented to this Court.[1]

**I.** **THE COUNTY COURT AT LAW'S ORDERS ARE VOID AND THE DISTRICT COURT ABUSED ITS DISCRETION BY ENFORCING ASPECTS OF THE VOID ORDERS IN THE ORDER APPOINTING THE RECEIVER.**

In her brief, Fran explained that the district court's Order Appointing

Receiver is itself void because it incorporates aspects of the County Court at

---

[1] On September 26, 2025, the Texas Supreme Court issued its order denying Appellant's motion to transfer and consolidate this appeal with the mandamus pending in the Waco Court of Appeals. As a result, and given this Court's letter to the Texas Supreme Court stating its belief that the Court may have jurisdiction to grant mandamus relief in a case transferred to this Court via docket equalization, Appellant intends to file a petition for writ of mandamus like the one currently pending in the Waco Court of Appeals in this Court as quickly as possible.

Law No. 1's orders appointing Judge Stem as receiver, which are void for want of jurisdiction. *See* App't Br. at 13-26. Thus, the Order Appointing Receiver constitutes an abuse of discretion requiring reversal. *See* App't Br. at 12. Appellees respond by misstating the rules for jurisdictional review.

## A. Fran May "Collaterally Attack" the County Court's Orders.

Appellees maintain that Fran's collateral attacks on the county court's orders are beyond the Court's jurisdiction in this appeal. *See* Resp. Br. at xix, 12, 14, 16, 19, 32, 34. Appellees are wrong.[2]

The county court's orders that were related to the Trust and were issued following the end of the temporary administration of Ms. Spanos's estate are void for want of subject matter jurisdiction. *See* App't Br. at 12-25. However, this argument is not, as Appellees claim, a stand-alone challenge to the county court at law's orders. Rather, the Court's determination that the county court's orders are void is simply a necessary step to resolve

---

[2] Appellees state that they do not challenge this Court's jurisdiction to grant mandamus relief, *see* Resp. Br. at xix; however, they repeatedly argue that Fran presents arguments that go beyond the Court's limited jurisdiction to review the order on interlocutory appeal. Appellees effectively argue that Fran cannot attack, and the Court cannot review, the validity of the void orders issued by the county court at law via interlocutory appeal. This is effectively a jurisdictional challenge to the Court's ability to review issues that could require the Court to grant mandamus relief. This is one example of the types of arguments that Fran had hoped to avoid by filing her motion to consolidate the appeal and mandamus into a single case.

whether the Order Appointing Receiver enforces void orders. *See* App't Br. at 12-26. Fran still appeals the Order Appointing Receiver.

> **B.** **This Court Has Jurisdiction to Review the County Court's Jurisdiction to Issue the Orders Appointing Judge Stem to Serve as Trust Advisor.**

Appellees blithely argue that this Court "need not analyze whether the County Court at Law had jurisdiction to issue any orders, especially agreed orders, more than three years ago, that Appellant failed to timely appeal." Resp. Br. at 32. Appellees are again wrong.

This interlocutory appeal vests the Court with jurisdiction to address the order appointing the receiver as well as "those issues subsumed within it." TEX. CIV. PRAC. & REM. CODE 51.014(a)(1); *Peters v. Blockbuster, Inc.*, 65 S.W.3d 295, 302 (Tex. App.—Beaumont 2001, no pet.); *see Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 147 (Tex. 2022) ("[P]ermissive appeals are resolved according to the same principles as any other appeal, including addressing all fairly included subsidiary issues and ancillary issues pertinent to resolving the controlling legal issue."). This Court cannot determine whether the Order Appointing Receiver improperly gives effect to the county court's void rulings without determining whether the county court's orders are, in fact, void. Thus, the issues related to the county court's

jurisdiction to issue the order appointing Judge Stem to serve as trust advisor are fairly included within this interlocutory appeal of the Order Appointing Receiver, and this Court has jurisdiction to review those issues.

**C.   The Order Appointing the Receiver Implicitly, Indirectly, or Silently Incorporates and Gives Effect to the County Court's Void Rulings.**

Appellees state as "fact" that the Order Appointing Receiver does not "mirror" or "refer to any prior orders, nor does it enforce any of Judge Stem's prior acts taken as Trust Advisor." *See* Resp. Br. at 14, 16-17, 29. Appellees are correct; however, their hyper-technical fixation on the literal text of the order ignores the effect of the orders and the fact that the text of the Order Appointing Receiver enforces the existence, and assumes the validity, of the county court's prior void rulings, thereby rendering the Order Appointing Receiver itself void.

The following aspects of the Order Appointing Receiver give effect to the county court's void orders: (1) the district court noted his reliance on the hearing testimony of the "Trust Advisor, Judge Robert Stem," whose appointment as trust advisor was improperly extended by the void order of the county court at law long after the close of Ms. Spanos's estate, CR 1292; and (2) the district court's order expressly accepts that Judge Stem is the

4

proper Trust Advisor, CR 1292, 1295-96. Though the Order Appointing Receiver does not state that it is adopting, enforcing, or incorporating aspects of the county court's void orders, it clearly, albeit silently, adopts the county court's extension of Judge Stem's appointment as trust advisor. This aspect of the district court's order is particularly troubling given the district court's evident deference to Judge Stem at the motions hearing.[3]

Nevertheless, Appellees argue that the district court's order is distinct from the county court's previous rulings and that this case is akin to the facts of *Estate of Hoskins*. Resp. Br. at 31-32. In *Hoskins*, the Thirteenth Court of Appeals reviewed whether a probate court's order appointing a receiver was a simple confirmation of an arbitrator's previous appointment of a receiver or was a distinct, stand-alone order appointing a receiver. *See* 501 S.W.3d 295, 302 (Tex. App.—Corpus Christi-Edinburg 2016, no pet.). In considering whether the party defending the appointment of the receiver filed a timely notice of appeal, the court of appeals ruled that the district court did not

---

[3] Appellees are quite bothered by Fran's argument that the Order Appointing Receiver "silently incorporates" aspects of the county court's void orders, going so far as to label it "specious." *See* Resp. Br. at 16, 29. But the silent, indirect, or implicit incorporation of the terms from one document, contract, or statute into another is a common legal principle. *See* BLACK'S LAW DICTIONARY *Imply* (12th ed. 2024); *id. Implied* (12th ed. 2024).

5

confirm the arbitrator's appointment of the receiver, but rather made an independent determination to appoint the same receiver:

> Rather than ratifying or approving any of the responsibilities which the arbitrator had previously granted to Rogers, the probate court's order assigned Rogers with a new and distinct set of responsibilities. . . . Rather than confirming the receiver and his previously ordered duties, the probate court's order signifies a new and separate appointment.

*Id.* at 303-04.

The differences between this case and *Hoskins* are stark, indeed. First, Fran has not argued that the district court's order was a confirmation of the county court's appointment of Judge Stem as trust advisor. The district court's order appointing a receiver and the county court's orders appointing the trust advisor are two separate rulings. The district court's order simply recognizes the existence and validity of the county court's void orders and gives credence to, and gives effect to, the county court's earlier void orders appointing the trust advisor.

Second, although the district court had jurisdiction to confirm the appointment of Judge Stem or appoint Judge Stem anew to serve as trust advisor, it did not do so. (Nor should the district court do so in light of Judge Stem's bias against Fran as evidenced by his impassioned and partisan

testimony at the motions hearing.[4])  Although Appellees are correct that the Order Appointing Receiver was a new and independent ruling, the order gives effect to and necessarily relies on the county court's void orders appointing Judge Stem as trust advisor, thereby rendering the district court's order itself void.[5]

The impact of the district court's acceptance of the appointment of Judge Stem as trust advisor cannot be understated.  Judge Stem was the only witness at the hearing on the motion to appoint a receiver.  *See* 2 RR 77-137. Thus, the court's findings in support of its appointment were based on the testimony of Judge Stem.  As a former judge and the purported trust advisor, Judge Stem was permitted by the district court, over objection, to testify as a legal expert on questions of law and the legal effect of the Trust document

---

[4]  For example, during the hearing, Judge Stem admonished Fran and her attorneys for filing the suit to remove his colleague, Mr. Malone, as Trustee, which he considered to be "ridiculous, baseless, [and] spiteful lawsuit conduct." 2 RR 101.

[5]  Appellees criticize the cases that Fran cites to support her argument that any orders enforcing prior void orders are likewise void because the cases involve the enforcement of orders "issuing sanctions for failing to comply[] or requiring a payment of attorneys' fees in connection with a void order."  Resp. Br. at 30-31.  It is true that the two cases that Fran cites in her opening brief involve the enforcement of void orders imposing sanctions and ordering the payment of attorney's fees.  This should not be surprising.  Enforcement cases are the most obvious place for this rule to be applied.  However, Appellees do not explain to the Court or Fran why this rule of law should not control here.

itself, the propriety of the county court's jurisdiction to appoint him as trust advisor, the merits of Fran's claims, and whether Fran's attorneys violated professional ethics.  *See* 2 RR 79, 93-95.

The district court's Order Appointing Receiver clearly accepts and validates the county court at law's orders appointing Judge Stem as trust advisor as well as his decision to remove Fran as trustee of the Trust.  This was improper and renders the Order Appointing Receiver void.

**D.    The County Court Did Not Have Jurisdiction to Issue the Orders Appointing Judge Stem to Serve as Trust Advisor.**

Appellees argue that the county court at law had jurisdiction over the administration of the Trust under its original probate jurisdiction and its ancillary jurisdiction.  *See* Resp. Br. at 18, 36-39.  Appellees are wrong, and in the process, largely fail to address the arguments in Fran's opening brief.

On March 8, 2022, the county court entered the first order appointing Judge Stem as temporary administrator of Ms. Spanos's estate and as the trust advisor of the Trust.  *See* CR 817-19.  Judge Stem's term as trust advisor was set to expire on September 5, 2022.  *See* CR 817.  On May 18, 2022, the county court at law discharged Judge Stem as the temporary administrator and terminated the estate administration.  CR 821-23.  Notwithstanding the

end of the administration and any proceedings related to the estate, the county court signed an order extending the appointment of Judge Stem as trust advisor until he "either determines that there no longer exists a necessity for a Trust Advisor, by agreement of the Parties, or if the Court, in the best interest of the Trust, determines cause exists for the removal of the Trust Advisor." *See* CR 827-28.

### 1. The County Court Did Not Have Original Probate Jurisdiction Following the End of the Temporary Administration of Ms. Spanos's Estate.

A county court at law has no jurisdiction to administer a trust. But, in a county without a statutory probate court, like McLennan County, such a court has the same original probate jurisdiction as county courts. *See* TEX. GOV'T CODE § 25.0003(d). A county court at law may exercise its original probate jurisdiction over all probate proceedings and "matters related to the probate proceeding." TEX. ESTATES CODE § 32.001(a).[6]

---

[6] A county court at law exercising original probate jurisdiction has authority to rule on the following matters related to a probate proceeding: (1) an action against a personal representative or former personal representative arising out of the representative's performance of the duties of a personal representative; (2) an action against a surety of a personal representative or former personal representative; (3) a claim brought by a personal representative on behalf of an estate; (4) an action brought against a personal representative in the representative's capacity as personal representative; (5) an action for trial of title to real property that is estate property, including the enforcement of a lien against the property; (6) an action for trial of the right of property that is estate property;

9

Thus, in March 2022, when the county court at law issued its original order appointing Judge Stem to serve as trust administrator, the court properly exercised its original probate jurisdiction over probate proceedings and matters related to probate proceedings. Although the county court at law properly exercised its jurisdiction to create a temporary administration of Ms. Spanos's estate and properly appointed Judge Stem as the estate administrator, the court did not have jurisdiction to appoint Judge Stem as a temporary administrator of the Trust. That issue is not a probate proceeding and is not a "matter related to a probate proceeding." *See* TEX. ESTATES CODE § 32.001(a); § 31.002(a), (b).[7] (Because Ms. Spanos's will was not admitted to probate, the county court had no jurisdiction over the administration of Ms. Spanos's inter vivos trust. *See* TEX. ESTATES CODE § 31.002(b)(3).)[8]

---

[7] (7) the interpretation and administration of a testamentary trust if the will creating the trust has been admitted to probate in the court; and (8) the interpretation and administration of an inter vivos trust created by a decedent whose will has been admitted to probate in the court.

[7] Ms. Leuschner's claims that Fran allegedly wasted estate assets, for example, was a claim within the county court's original probate jurisdiction because it was a matter related to the probate proceeding. *See* TEX. ESTATES CODE § 31.002(a)(1); CR 806-07.

[8] In her opening brief, Fran argued that one of the many reasons that the county court at law had no jurisdiction over Ms. Leuschner's claims regarding the administration of the Trust was that the amount in controversy at issue here exceeded the limits of the county court at law's amount-in-controversy jurisdiction. *See* App't Br. at 16-18. Appellees responded that Fran failed to prove the amount in controversy. *See* Resp. Br. at 40-

### 2. County Court at Law No. 1 Did Not Have Pendent or Ancillary Jurisdiction Over the Administration of the Trust Either.

Statutory county courts at law exercising original probate jurisdiction can also exercise "pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy." TEX. ESTATES CODE § 32.001(b). The county court had no pendent or ancillary jurisdiction over Ms. Leuschner's claims in September 2022, when the county court at law extended Judge Stem's tenure as trust administrator because the probate proceeding was closed and there was no longer a pending probate matter to which pendent jurisdiction could attach.[9]

Appellees repeatedly argue that Ms. Spanos's estate was never closed. *See* Resp. Br. at 18-19, 41-42 & n.69. Citing Section 32.001(d), Appellees claim that Ms. Spanos's estate remains open because there "has never been a

---

41. Appellees' responsive argument is dead wrong. But while researching an unrelated issue, the undersigned counsel discovered two cases holding that the limits on a county court's amount-in-controversy jurisdiction, which would ordinarily control, are not applicable when a county court exercises its original probate jurisdiction. *See, e.g.*, *Womble v. Atkins*, 331 S.W.2d 294, 299 (Tex. 1960); *Matter of Estate of Rushing*, 644 S.W.3d 383, 387 (Tex. App.—Tyler 2022, pet. denied). Regardless, this argument is not necessary for Fran to prevail because the county court certainly had no jurisdiction after May 2022— *i.e.*, when the court extended the appointment of Judge Stem as trust advisor.

[9] Fran conflated the terms ancillary jurisdiction and jurisdiction over matters related to a probate proceeding on two pages of her opening brief. *See* App't Br. at 20-21. Although the terms were erroneously labeled, the remainder of the arguments presented in Section II(A)(4) were otherwise correct.

decree of final distribution" and the county court at law's order ending the temporary administration of the estate "expressly contemplated collection of assets or debts, and a possible future need to probate the will of [Ms.] Spanos." Resp. Br. at 42 (quoting TEX. ESTATES CODE § 32.001(d)). This argument is off base.

First, on March 8, 2022, the county court at law ordered a temporary administration of Ms. Spanos's estate and appointed Judge Stem to serve as temporary administrator. CR 817-19; *see* TEX. ESTATES CODE § 452.051(a). A little over two months later, the court ended the temporary administration and discharged Judge Stem as estate administrator. CR 821-23. The order ending the administration reflects that Fran and Ms. Leuschner represented to the county court "that based on their investigation to date it appears there is no necessity of administration at this time and that [Fran] and [Ms.] Leuschner, in their respective capacities, should be authorized to transfer title to any titled assets via an Affidavit of Heirship or other legal means." CR 821. Based on this representation, the county court discharged Judge Stem as administrator and terminated the temporary administration. CR 823. Thus, in May 2022, the administration of the estate was ended as wholly unnecessary.

No proceedings or filings related to the estate were filed by either party until this month—*i.e.*, over three years later—when Vernon Leuschner, on behalf of Ms. Leuschner, filed an application to probate Ms. Spanos's pour-over will and for the appointment of another temporary administrator. *See* Tab A.[10]  This improper filing demonstrates that Appellees are well aware that the probate proceeding and the estate were closed.

Second, courts exercising original probate jurisdiction may exercise pendent or ancillary jurisdiction only when a "close relationship exists between the non-probate claims and the matter pending in the probate court" and doing so "will aid in the efficient administration of a matter pending in the probate court." *Schuchmann v. Schuchmann*, 193 S.W.3d 598, 603 (Tex. App.—Fort Worth 2006, pet. denied); *see In re Estate of Hallmark*, 629 S.W.3d 433, 438 (Tex. App.—Eastland 2020, no pet.).  A close relationship between probate and non-probate proceedings exists, for example, when the matters involve the same parties, the same causes of action, and the same underlying facts.  *See, e.g.*, *Castaneda v. Chapa*, No. 13-22-00537-CV, 2024 WL

---

[10] Appellees represent to this Court that they "believe there is at least one asset that will have to be dealt with through probate." *See* Resp. Br. at 18 n.69.  However, Ms. Leuschner does not identify any assets allegedly requiring administration.  CR 802-03.

2197216, at *5 (Tex. App.—Corpus Christi-Edinburg May 16, 2024, pet. denied).

The County Court at Law No. 1's exercise of jurisdiction over the trust claims did not and could not have "aid[ed] in the efficient administration of" any estate claims. (Nor would jurisdiction over Trust claims aid that court in administering the one unidentified asset in Ms. Leuschner's new motion to probate the will.) As the parties and Judge Stem recognized a little over two months after the creation of the temporary administration, there was no need for an administration of Ms. Spanos's pour-over will or estate. The county court's improper exercise of jurisdiction over the Trust thus did not aid in the county court at law's brief administration of the estate.

Third, even if the county court could have exercised any pendent or ancillary jurisdiction over the Trust, the court lost the authority to exercise pendent or ancillary jurisdiction no later than May 18, 2022—*i.e.*, the date the county court at law terminated the administration of Ms. Spanos's estate. Thereafter, there were no pending probate claims for any Trust issues to be pendent or ancillary to. *See, e.g., Lawton v. Lawton*, No. 01–12–00932–CV, 2014 WL 3408699, at *2 (Tex. App.—Houston [1st Dist.] Jul. 10, 2014, no pet.); *Barton v. Buchanan*, Nos. 03–02–00596–CV, 03–02–00632–CV, 2003 WL

14

21939725, at *2 (Tex. App.—Austin Aug. 14, 2003, no pet.); *Goodman v. Summit at West Rim, Ltd.*, 952 S.W.2d 930, 933 (Tex. App.—Austin 1997, no pet.).[11]

The county court at law terminated the temporary administration and discharged Judge Stem as the temporary administrator of the estate on May 18, 2022. CR 821-24. On that date, the probate proceeding ended, and the county court at law lost any alleged pendent or ancillary jurisdiction over any claims. *See Goodman*, 952 S.W.2d at 933; *Lawton*, 2014 WL 3408699, at *2. Thus, the county court's September 1, 2022, order extending the purported appointment of Judge Stem as the trust advisor is not justified by the county court's exercise of pendent or ancillary jurisdiction. And Judge Stem's

---

[11] In their brief, Appellees attempt to undermine Fran's reliance on the *Goodman* ruling by pointing out that *Goodman* interpreted the predecessor to Section 32.001 and because the court erroneously "noted that in Federal cases jurisdiction was supposedly lost over pendent claims if the underlying Federal jurisdiction bases is lost." Resp. Br. at 42-43. Even ignoring the other cases cited by Fran to support this argument, Appellees' arguments distinguishing *Goodman* are incorrect for at least two reasons. First, the language of the ancillary jurisdiction provision in former Probate Code Section 5A is identical to the current language of the ancillary jurisdiction provision in Section 32.001 of the Estates Code. *See Molinet v. Kimbrell*, 356 S.W.3d 407, 415 (Tex. 2011) (characterizing holdings interpretating identical, predecessor statutes as "instructive regarding our application" of current statute). Second, *Goodman's* discussion of a federal court's supplemental jurisdiction is dicta. Moreover, a federal district court's exercise of its statutory supplemental jurisdiction is totally unrelated to a county court at law's exercise of pendent jurisdiction when the court is asserting its original probate jurisdiction. *See* 28 U.S.C. § 1367.

continued service as the purported trust advisor, and his actions taken with respect to the Trust after May 18, 2022, are void. *See* CR 827-28, 923.

Because the county court at law could not exercise jurisdiction over Ms. Leuschner's trust claims and, regardless, certainly could not exercise pendent jurisdiction after May 18, 2022, its order extending the appointment of Judge Stem as trust advisor, and the district court's order approving and enforcing the county court's rulings and Judge Stem's decisions made after May 18, 2022, are likewise void. Thus, the district court's ruling constitutes an abuse of discretion that must be reversed.

## II. THE COUNTY COURT'S ORDERS ARE VOID, NOT VOIDABLE, BECAUSE THE COURT HAD NO SUBJECT MATTER JURISDICTION OVER THE CLAIMS RELATED TO THE TRUST.

Appellees brazenly state to this Court that the county court at law's orders were not void, but rather voidable; therefore, Appellees conclude that Fran was required to directly appeal those rulings and cannot challenge their validity here. *See* Resp. Br. at 17, 32, 34-36, 45. Appellees are wrong once again.

It is true that voidable orders, unlike void orders, must be challenged in a direct appeal. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). However, Appellees ignore an important corollary of that rule, which

16

controls here: If a Texas court with "no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act" issues an order, it is ***void, not voidable***. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). A void order, unlike a voidable order, is subject to attack in a new lawsuit. *See Joachim*, 315 S.W.3d at 863.

As previously explained, the county court had no jurisdiction over the Trust and no jurisdiction to appoint Judge Stem to serve as trust advisor in the first place. *See* App't Br. at 13-25. Nevertheless, citing *Parsons v. Parsons*, 648 S.W.3d 354, 357 (Tex. App.—Texarkana 2021, pet. denied) and *In re D.L.S.*, No. 05-08-00173-CV, 2009 WL 1875579, at *2 (Tex. App.—Dallas July 1, 2009, orig. proceeding), Appellees contend that the county court's orders are not "void on their face" as required to collaterally challenge an order and must therefore be presumed valid because the county court recited that it had jurisdiction in its orders. *See* Resp. Br. at 34-36. But Appellees are wrong for at least two reasons: (1) jurisdictional recitations in an order issued by a court of general jurisdiction are presumed valid and cannot be collaterally attacked ***if*** the court that issued them had subject matter jurisdiction; and (2) the county court's order extending the appointment of Judge Stem as trust

17

advisor, which was issued after the end of the temporary administration, does not contain a jurisdictional recital.

First, Appellees correctly cite several cases reciting the general rule that judgments with jurisdictional recitations that are issued by courts of general jurisdiction are presumed valid and that extrinsic evidence cannot be used to establish otherwise. But unlike here, those cases do not involve challenges to a court's authority to act or its subject matter jurisdiction.

A party may collaterally attack an order issued by a court with no subject-matter jurisdiction. *See Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985). The rule regarding the inherent validity of jurisdictional recitations only applies when the court issuing the challenged order or judgment has general jurisdiction over the subject matter.

Here, Fran challenges the county court at law's jurisdiction to issue any orders related to the administration of the Trust, specifically arguing that the court had no subject matter jurisdiction to administer the Trust. The cases cited by Appellees do not involve questions of a court's subject matter jurisdiction or authority to issue an order.

In *Parsons*, for example, the court of appeals expressly noted that the parties had not challenged the issuing court's jurisdiction. *See* 648 S.W.3d at

18

357; *Solomon, Lambert, Roth & Assocs., Inc. v. Kidd*, 904 S.W.2d 896, 901 (Tex. App.—Houston [1st Dist.] 1995, no writ); *see also In re D.L.S.*, 2009 WL 1875579, at *2 (appellant could not collaterally attack default child support order issued by court of general jurisdiction given the orders jurisdictional recitations). Such cases do not involve a collateral attack on a void order.

Second, although Appellees contend that the county court at law's orders are not "void on their face" because the court recited in its orders that it possessed jurisdiction, *see* Resp. Br. at 34-36, not all of the county court at law's orders regarding the administration of the Trust so state. One order that is attacked in this appeal that does not include a jurisdictional recitation is the county court's September 1, 2022, order extending the term of Judge Stem's service as trust advisor. CR 827-28. Pursuant to that order, Judge Stem purports to act as the trust advisor, and his authority to act as such was recognized and accepted by the district court. CR 1292.

In sum, while Appellees state the correct jurisdictional-recitation rule, that rule does not apply when the court has no subject matter jurisdiction over the case. In such cases, the court's order is void as a matter of law and constitutes a reversable abuse of discretion.

**III. FRAN DID NOT WAIVE AND IS NOT ESTOPPED FROM ARGUING THAT THE COUNTY COURT AT LAW AND DISTRICT COURT'S ORDERS ARE VOID.**

Citing *In the Interest of R.V., Jr.*, 977 S.W.2d 777 (Tex. App.—Fort Worth 1998, no pet.) and *For the Protection of S.M.*, 658 S.W.3d 876, 877 (Tex. App.—El Paso 2022, no pet.), Appellees contend that Fran waived and is estopped from arguing that the county court or district court's orders are void because she did not object to Judge Stem testifying at the motions hearing and agreed to the county court's orders appointing Judge Stem as trust advisor. *See* Resp. Br. at 30, 45-46. Appellees are wrong, and their reliance on *R.V.* and *S.M.* is misplaced.

Subject matter jurisdiction "is never presumed and cannot be waived." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). And the two cases relied upon by Appellees do not involve challenges to a court's subject matter jurisdiction.

In *R.V.*, the father of a minor child waived any error arising from the trial court's pretrial ruling that he would have to assert his Fifth Amendment right against self-incrimination on a question-by-question basis during trial because the father failed to object to the trial court's ruling and failed to get a ruling from the court on his objection. *See R.V.*, 977 S.W.2d at 780. *R.V.*

20

did not involve a challenge to the trial court's jurisdiction. There was no claim that the ruling of the district court, a court of general jurisdiction, was void.

In *S.M.*, a family member collaterally attacked an agreed protective order, arguing that the district court that granted the protective order did not have jurisdiction because it failed to make mandatory findings required by the Code of Criminal Conduct and could not enter an agreed protective order. *See S.M.*, 658 S.W.3d at 879. However, the *S.M.* court did not address the "jurisdictional" issue because the court of appeals determined that the agreed protective order was not void. *Id.* at 880. The court held that the version of the Code of Criminal Conduct then in effect permitted an agreed protective order in family cases. *Id.* In so ruling, the *S.M.* court did reiterate that a person cannot agree to a protective order, thereby doing away with the need for proof at a hearing, and later attempt to avoid the consequences of the protective order by relying on the alleged lack of proof. *Id.* The court did not hold that a party collaterally attacking an agreed order waives any challenge to a void agreed order issued by a court without subject matter jurisdiction. *Id.* at 879.

21

**IV. THE ORDER APPOINTING RECEIVER IS NOT SUPPORTED BY RELEVANT EVIDENCE.**

Appellees contend that the Order Appointing Receiver was supported by evidence of Fran's past breaches of trust, the need to "resolve ongoing litigation," and conflict regarding the administration of the Trust. *See* Resp. Br. at 15, 19-25. Appellees are incorrect.[12]

**A. No Evidence Supports the Appointment of the Receiver Under Texas Civil Practice & Remedies Code § 64.001(a)(6).**

The district court cited Section 64.001 as one basis for appointing the receiver to sell the Front 45 Acres. Appellees only attempt to justify the ruling under Section 64.001(a)(6). This section permits the appointment of a receiver "in any case in which a Receiver may be appointed under the rules of equity." Resp. Br. at 23.

As Fran explained in her opening brief, (1) a court may appoint a receiver under Section 64.001(a)(6) *only* in "instances beyond" the five subsections justifying the appointment of a receiver in Section 64.001(a)— *i.e.*, that subsection does not permit the appointment of an receiver in cases

---

[12] Although legal and factually sufficiency challenges are not independent grounds for reversal for abuse of discretion, it is a relevant factor in determining whether the court abused its discretion. *See Pickens v. Pickens*, 62 S.W.3d 212, 214 (Tex. App.—Dallas 2001, pet. denied); *In re Estate of Martinez*, No. 01-18-00217-CV, 2019 WL 1442100, at *2 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet.).

that would ordinarily be governed by one of the five preceding subsections; and (2) this situation would ordinarily be controlled by Section 64.001(a)(3), thereby precluding any appointment under Section 64.001(a)(6). *See* App't Br. at 33-35. Appellees wholly failed to respond to this argument or address the supporting cases cited in Fran's brief. *See* Resp. Br. at 23-25.[13]

## B. There Was No Evidence Supporting the Appointment of a Receiver Under Texas Property Code § 114.008(a)(5).

Appellees also argue that Section 114.008 of the Property Code justifies the appointment of a receiver "where a breach of trust ***has occurred*** or might occur," which permitted the trial court to appoint the receiver. Resp. Br. at 21 (emphasis in original). Appellees contend that there is "ample evidence establishing that Appellant committed or threatened numerous breaches." *Id.*

Similarly, the district court made the following two findings and conclusions:

---

[13] Appellees point out that the cases cited in Fran's brief interpret a former version of Section 64.001(a)(6) and argue that those cases are therefore inapplicable. *See* Resp. Br. at 34 & n.91. But when the Legislature amends a statute with language that is substantially the same, the new version conveys the same intent and meaning. *See Walker v. Money*, 120 S.W.2d 428, 431 (Tex. 1938). The former version of Section 64.001(a)(6) is identical to the current version of Section 64.001(a)(7). *See* Tab B. In addition, the new amendments to Section 64.001(a) took effect ***after*** the district court issued its Order Appointing Receiver. *See* Acts 2025, 89th Leg., ch. 73 (S.B. 2034), § 1, eff. May 19, 2025; Acts 2025, 89th Leg., ch. 956 (S.B. 17), § 2, eff. Sept. 1, 2025.

- [A] Receiver is necessary and appropriate for the purpose of securing and selling the Front 45 Acres, along with granting any easement(s) pertaining to the Front 45 Acres, ***so as to minimize harm to the Trust, Trust property, and beneficiaries of the Trust***, and to effectuate the terms of the Trust in an efficient and expeditious manner . . . .

- ***Irreparable damage will ensue to the beneficiaries of the Trust unless there is an immediate sale of the Front 45 Acres*** pursuant to the terms of the Trust.

CR 1292 (emphasis added). Both the Appellees and the trial court are incorrect; there is no evidence to support a finding of a potential breach of trust or the two findings and conclusions.

No evidence demonstrated a threat of any potential harm to the Trust, Trust property, or the beneficiaries of the Trust absent an immediate sale of the Front 45 acres. Although Judge Stem speculated wildly (and incorrectly) that, as a result of this litigation, there would be nothing left in the Trust to distribute to the beneficiaries, he later admitted that he was personally unaware of the Trust's financial condition. *See* 2 RR 101, 119-20.

Moreover, Section 114.008 actually provides that a court may appoint a receiver "***[t]o remedy*** a breach of trust that has occurred or might occur." TEX. PROP. CODE § 114.008(a) (emphasis added). Appellees allege, and Judge Stem testified, that Fran allegedly breached her duty of trust when she

24

served as trustee. *See* Resp. Br. at 21-23; 2 RR 705-06.[14] However, there was no evidence suggesting that the appointment of a receiver to sell the Front 45 Acres was necessary *to remedy* any past or potential breaches of trust by Fran.

Fran is not currently recognized as trustee of the Trust. There is no evidence that she might now somehow breach a duty of trust. How could she? She is no longer in a position to do so since she is not currently recognized as trustee of the Trust. There was no evidence that the appointment of a receiver was necessary "to remedy" her alleged, past breaches of trust. (Or Appellees have failed to point out any such evidence to Fran or the Court in their brief.) The most that Appellees have alleged is

---

[14] In reality, Appellees' allegations of wrongdoing are rhetoric at best. Appellees cite to allegations of wrongdoing set forth in their petition in intervention and Ms. Leuschner's application for the appointment of a temporary administrator and trust advisor as well as an email from their attorney to Mr. Malone as the "evidence" supporting the appointment of the receiver under the property code. *See* Resp. Br. at 21 & notes 80-85. That is not evidence. Appellees do cite Judge Stem's characterization of Fran's actions as trustee as "inappropriate" and his testimony that Fran was removed as trustee after allegedly committing a "multitude" of breaches of trust. Fran recognizes that the trial court could have believed Judge Stem. However, it must be noted that later in the hearing, Judge Stem admitted that his hearing testimony directly conflicted with prior statements that he made to Fran and her attorney (before she sought to remove his hand-chosen colleague as trustee) and that, during those statements, he blamed Appellees for Fran's difficulty in administering the Trust. *See* 2 RR 103, 112. As for the allegation that Fran failed to disclose the existence of funds in a bank account to Mr. Malone, it is undisputed that the bank account at issue is set forth in Schedule A to the Trust itself. *See* 2 RR 134; CR 551.

25

that Fran's "Motion to Re-Affirm itself is evidence that Fran intends to contravene the Interested Trustee provision in the Trust in order to reach the result she desires, which does not align with the Trust and would be a future breach of trust." Resp. Br. at 21-22. Of course, this is argument and speculation and constitutes no evidence. *See Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no pet.) (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004)).

## C. There Was No Evidence Supporting the Appointment of a Receiver Under the General Rules of Equity.

Appellees also argue that an equitable receivership was needed "to resolve years long litigation and dispute[s] over the management of probate property." Resp. Br. at 23. The district court noted that there was an "extraordinary controversy" surrounding the sale of the Front 45 Acres and concluded that the appointment of a receiver was justified by that and the "material risk of harm, injury, damage and/or loss to the Property and/or Trust funds, as well as the various beneficiaries." CR 1292.

As discussed above, there is no evidence to support the district court's finding of a material risk of any harm to Trust property, funds, or the various

beneficiaries. Moreover, as discussed in Fran's opening brief, a court should not appoint an equitable receiver unless evidence reflects "a threat of serious injury to the applicant." *Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see* App't Br. at 37. Appellees' brief ignores this legal argument and the cited authorities.

"When a court appoints a receiver, the court has determined that property should no longer be under the control of the parties but instead within the custody of the court." *Gilbreath v. Horan*, 682 S.W.3d 454, 552 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). If the passage of time alone or a protracted disagreement between trust beneficiaries were sufficient to justify the appointment of an equitable receiver, then the reality will be that every sizeable or complex trust is likely to soon be under the supervision of a Texas court. This result would transmute an equitable receivership from the "harsh, drastic, and extraordinary remedy" it is intended to be into an everyday occurrence. *See Benefield v. State*, 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

## V. THE DISTRICT COURT'S ORDER APPOINTING RECEIVER IS OVERLY BROAD AND VIOLATES FRAN'S RIGHTS.

Appellees reject Fran's argument regarding the overly broad scope of the Order Appointing Receiver for two reasons. First, Appellees contend that the Court should disregard Fran's argument that the order technically enjoins her from even filing this interlocutory appeal. Why? Because Appellees have not yet challenged Fran's right to do so in this Court. *See* Resp. Br. at 26-27; CR 1296. It cannot be disputed, however, that the order currently enjoins Fran from taking any action that indirectly hinders the Receiver's sale of the property, which would include this appeal.[15]

Second, Appellees reject Fran's complaint that the order currently requires her to pay the expenses incurred by the Trust in the ordinary course of business—even though Fran is not currently recognized as trustee and is not currently a signatory to the Trust's bank accounts. According to Appellees, "the Order only contemplates an efficient payment mechanism to pay Trust expenses with Trust funds," and they "proposed a

---

[15] Appellees also disingenuously contend that "Fran admits the Order is not an anti-suit injunction[] and does not preclude the filing of any litigation." Resp. Br. at 27 & n.103. This is dead wrong. Fran explained that the district court's order was "not technically an anti-suit injunction because [it] was not issued by a separate court"; however, Fran immediately observed that "the effect is the same" and the order "would bar Fran's right to prosecute her appeal." App't Br. at 44.

28

supplemental order to Judge Luna to modify the Order (if necessary) such that the provision requiring Appellant to pay the Trust's expenses from Trust funds be modified to moot this issue." Resp. Br. at 28. The fact remains that the district court has not signed a supplemental order, and the order currently requires Fran to pay the Trust's bills even though she has no access to Trust funds. If the Waco Court had not stayed the effect of the order pending this appeal, the order would require Fran to pay Trust expenses from her personal funds.

Respectfully submitted,

By: */s/ Rick Thompson*
    Kirk L. Pittard
    State Bar No. 24010313
    Rick Thompson
    State Bar No. 00788537
    rthompson@dpslawgroup.com
    DURHAM, PITTARD & SPALDING, LLP
    P.O. Box 224626
    Dallas, Texas 75222
    (214) 946-8000
    (214) 946-8433 (fax)

    Craig D. Cherry
    State Bar No. 24012419
    ccherry@cjsjlaw.com
    Ryan C. Johnson
    State Bar No. 24048574
    rjohnson@cjsjlaw.com
    Scott H. James
    State Bar No. 24037848
    sjames@cjsjlaw.com
    CHERRY JOHNSON SIEGMUND
    JAMES, PLLC
    7901 Fish Pond Road, 2nd Floor
    Waco, Texas 76710
    (254) 732-2242
    (866) 627-3509 (fax)

    **COUNSEL FOR APPELLANT**

30

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Rule 9.4(i)(2)(D) because it contains 6,952 words, excluding any parts exempted by Rule 9.4(i)(1).

*/s/ Rick Thompson*
**Rick Thompson**

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, a true and correct copy of the foregoing brief was served on the following counsel of record via electronic service, pursuant to the Texas Rules of Appellate Procedure.

Jim Dunnam
jimdunnam@dunnamlaw.com
Andrea Mehta
andreamehta@dunnamlaw.com
Mason Vance Dunnam
masondunnam@dunnamlaw.com
DUNNAM & DUNNAM LLP
4125 West Waco Drive
Waco, Texas 76710

Andy McSwain
mcswain@thetexasfirm.com
Mark E. Firmin
mfirmin@thetexasfirm.com
BEARD KULTGEN BROPHY BOSTWICK
& DICKSON PLLC
220 South 4th Street
Waco, Texas 76701

*Attorneys for Intervenors/Appellees Robert Spanos, Chrisopher Spanos, and Nicole Spanos*

*Attorneys for Intervenor/Appellee Vernon Leuschner*

*/s/ Rick Thompson*
Rick Thompson

**No. 15-25-00072-CV**

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AT AUSTIN

FRANCES SPANOS SHELTON,

*Appellant*,

v.

VERNON LEUSCHNER, ROBERT LEE SPANOS, CHRISTOPHER BLAKE
SPANOS, KATHRYN NICOLE LAWRIE, AND KATHERINE LEUSCHNER,

*Appellees.*

On Interlocutory Appeal from the 414th District Court
of McLennan County, Texas, Cause No. 2024-3035-5

**APPENDIX IN SUPPORT OF REPLY BRIEF**

Tab A  Application to Probate Will and for Appointment of a
Temporary Administrator; Frances Spanos Shelton's Response
and Opposition to Applicant's Application to Probate Wil and
for Appointment of Temporary Administrator

Tab B  Tex. Civ. Prac. & Rem. Code § 64.001 (current & former versions)

# TAB A

**CAUSE NO. 20220135PR1**

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT OF |
| | § | |
| DOROTHY J. SPANOS, | § | |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## APPLICATION TO PROBATE WILL AND FOR
## APPOINTMENT OF A TEMPORARY ADMINISTRATOR

COMES NOW, Applicant, Vernon Leuschner, as the durable power of attorney for Katherine Leuschner ("Applicant") and pursuant to Texas Estates Code § 452.051(a) files this Application to Probate Will and for Appointment of a Temporary Administrator and furnishes the following information to the Court for the appointment of a temporary administrator

## I.
## BACKGROUND

1.  Dorothy J. Spanos died on September 18, 2021. She died testate with a pour-over will dated December 19, 2017 (the "Will"), that calls for her probate assets to be transferred to the Dorothy Spanos Living Trust. The Will has never been admitted to probate and limitations runs on September 18, 2025.

2.  On March 2, 2022, Katherine Leuschner initiated this cause by filing an Application for Appointment of a Temporary Administrator and of a Trust Advisor, which is incorporated herein by reference and attached hereto as **Exh. A**.

3.  On March 8, 2022, Katherine Leuschner filed a Proof of Death and Other Facts. Following a hearing on the same day, the Court appointed Judge Robert Stem to serve as the Temporary Administrator of the Estate of Dorthy J. Spanos and as Trust Advisor of the Dorothy Spanos Living Trust. Letters of Temporary Administration were issued to Judge Stem on March 11, 2022.

4.  On or about May 18, 2022, the Court signed an Agreed Order Approving the Discharge of Temporary Administration and Termination of Temporary Administration (the "Agreed Order"). *See*

**Exh B**. Under the Agreed Order, the parties agreed that there was no necessity of administration at the time, and requested that Judge Stem be discharged from his role as Temporary Administrator, but to continue to serve as the Trust Advisor. The Order also provided that "in the event that assets or debt of the Estate requiring administration were discovered that Frances Shelton, as the named Independent Executor in the Will would either offer the Will for probate, probate the Will as a muniment of title, or record a small estates affidavit, whichever is most feasible or cost effective." The Agreed Order had the effect of leaving Decedent's Estate open and it has never been closed. The September 1, 2022, Agreed Order extending Judge Stem's appointment as Trust Advisor indefinitely evidences that the Estate and this Cause remain open.

5.      Since September 1, 2022, Judge Stem removed Frances Shelton as Trustee of the Trust, and the heirs and beneficiaries of the Dorothy Spanos Living Trust have become embroiled in litigation that is currently pending in the 414th Judicial District Court, including an interlocutory appeal and petition for writ of mandamus that are also pending and involved Judge Luna's appointment of Aubrey Williams as Receiver over certain real property owned by the Dorothy Spanos Living Trust that occasioned the initial Application to be filed in March 2022.

6.      Applicant has identified an asset of Decedent that he does not believe has been dealt with that creates a necessity for a temporary administration. Decedent was the sole member and manager of Spanos Management Company, LLC, and public information reports have continued to be filed with the State of Texas showing Decedent as the Director and President. On information and belief, Spanos Management Company, LLC has a bank account with Independent Financial Bank that contained approximately $40,000 as of September 29, 2023. The membership interest is a probate asset and there is the potential that the bank account of Spanos Management Company, LLC is also a probate asset of Decedent that would require administration to be properly handled and distributed to the Trust.

7. With limitations set to expire on September 18, 2025 and there being no apparent movement by Frances Shelton to probate the Will, Applicant, out of an abundance of caution, moves that the Court admit the Will of Dorothy J. Spanos to private and appoint a Temporary Administrator to wind up the affairs of the Spanos Management Company, LLC, to close the Spanos Management Company, LLC's bank account, and to deposit the funds in an account owned by the Dorothy Spanos Living Trust.

## II.
## APPLICATION

8. Applicant is domiciled in Waco, McLennan County, Texas. The last three numbers of Applicant's driver's license are 427, and the last three number of her social security number are 981.

9. Decedent died on September 18, 2021, in Waco, McLennan County, Texas, at the age of 86 years at which time Decedent was domiciled and resided in Crawford, McLennan County. The last three digits of Decedent's social security number are 332.

10. Decedent died testate leaving a Will dated December 17, 2017. The Will contains a Self-Proving Affidavit that was witnessed by Taylor N. Kincannon, 8117 Preston Road, Suite 300, Dallas, Texas 75225, and Billy Borunda, 120 Hatach Road, Lorena, Texas 76655. A copy off the will be tendered to the Court along with a certified copy of Decedent's death certificate.

11. The Court has jurisdiction and venue over this matter because Decedent was domiciled and had a fixed place of residence in McLennan County on the date of death., and there is a pending estate open under this cause.

12. A necessity exists for the administration of Decedent's estate. The interest of Decedent's estate requires immediate appointment of a temporary administrator because of the issues detailed herein.

13. Applicant respectfully requests that the Court appoint Aubrey Wiilliams or another qualified third party to serve as the Temporary Administrator. As a Texas resident and licensed attorney that

was appointed by Judge Luna as a Receiver of real property owned by the Dorothy Spanos Living Trust, Mr. Williams would be a suitable Temporary Administrator of the Estate. His office is located at P.O. Box 20156, Waco, Texas 76702. Tex. Estates Code § 256.052.

14. Decedent's Estate is believed to be composed of personal property described generally as membership interest and cash, with a probable value of $40,000.

15. Pursuant to Texas Estates Code §§ 452.002 and 256.054 and to the best of Applicant's knowledge, Decedent died testate. A copy of the purported Will is produced for probate because an original copy of the purported Will is not under Applicant's control or in Applicant's possession. Based on the copy of the Will that Applicant submit, the Will is a pour-over will that gives all of Decedent's probate property to the Trustee of the Dorothy J. Spanos Living Trust. *See* Tex. Estates Code § 256.054. The office of Trustee of the Dorothy Spanos Living Trust is currently vacant.

16. No child or children were born to or adopted by Decedent after the date of the Will or any other will known to exist.

17. After the date of Decedent's Will, no marriage was dissolved.

18. Neither the Will nor any known prior Will of Decedent name either the State of Texas, a governmental agency of the State of Texas, or a charitable organization as a devisee.

19. Aubrey Williams is not disqualified by law from accepting letters of administration.

**Necessity of Temporary Administration.**

20. While Frances Shelton and Rick Shelton are listed respectively as the Independent Executor and the successor, Frances Shelton was removed as Trustee of the Dorothy Spanos Living Trust on May 3, 2023 because the Trust was "indeed of a truly neutral, detached, and independent trustee." The same is needed in connection with Decedent's Estate due to the discord and friction that currently exists between Decedent's heirs and beneficiaries.

21. As detailed above, a necessity exists for the administration of the Decedent's estate because estate assets are in danger of being lost or wasted due to limitations running on September 18, 2025.

22. Appointing a Temporary Administrator is in the best interest of Decedent's estate because it will ensure that an impartial third party is in place to verify and determine the assets of the Estate and timely transfer them to the Trust (ii) that assets are not wasted or used in an impermissible manner, and (ii) that the wishes of the Decedent are honored and her Will probated to effectuate those wishes.

23. As mentioned above, Applicant respectfully requests that the Court appoint the Aubrey Williams or another suitable third party as the Temporary Administrator for the Estate of Dorothy J. Spanos.

## Duties and Powers of Temporary Administrator

24. A Temporary Administrator of the Estate should be given the following duties and powers:

   a. To take charge and possession of any real property of the Estate that is not otherwise in the Trust.

   b. To take possession of all accounts, funds, stocks, CDs, and other financial accounts subject to probate belonging to Decedent at the time of her death; to open new accounts and to be authorized signatory on those accounts;

   c. To execute and deliver any instruments necessary for the sale, transfer or conveyance of any interest in real property owned by Decedent (including but not limited to contracts, deeds, closing statements, purchase and sale agreements, affidavits, pleadings and other similar documents) at the time of death; to pay court costs and all necessary expenses and attorney's fees; to sue or defend lawsuits; and to exercise any rights necessary to protect Decedent's real and personal property;

   d. To insure the Estate and its assets against liability in appropriate cases;

   e. To insure the Estate property against fire, theft, and other hazards, as deemed necessary by the administrator;

   f. To pay taxes, court costs, and bond premiums, as necessary;

   g. To hire professionals to represent, advise, or assist the Temporary Administrator in performance of his duties;

h.	To consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent;

i.	To consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets;

j.	To asses and determine all claims and debts owed to the Estate and/or to be paid by the Estate to its creditor; and

k.	To file an Interim Inventory of the Estate of Decedent, within forty-five (45) days of appointment.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Vernon Leuschner, as the durable power of attorney of Katherine Leuschner, respectfully requests that the Court make an immediate appointment of Aubrey Williams or another suitable third party to serve as Temporary Administrator of Decedent's estate to serve as such until discharged by order of this Court, for the issuance of Letters of Administration to the Temporary Administration, and for any such further relief to which she may be entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY BOSTWICK & DICKSON, PLLC**

Andy McSwain
State Bar No. 13861100
Mark E. Firmin
State Bar No. 24099614
220 South 4th Street
Waco, Texas 76701
(254) 776-5500 – Telephone
(254) 776-3591 – Fax
mcswain@thetexasfirm.com
firmin@thetexasfirm.com

**ATTORNEYS FOR INTERVENOR VERNON LEUSCHNER, AS THE DURABLE**

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September, copy of the foregoing instrument has this day been served upon all known current counsel of record via email, fax, and/or certified mail return receipt requested.

## VERIFICATION

**STATE OF TEXAS** §
§
**COUNTY OF McLENNAN** §

Before me, the undersigned notary public, personally appeared Vernon Leuschner, as the durable power of attorney of Katherine Leuschner known to me or proved to me through her Texas Driver's License, who after being duly sworn, upon her oath stated that she is the Applicant in the above case, that she has read the foregoing document, and the factual allegations contained therein are true and correct within her personal knowledge.

_____
Vernon Leuschner, Durable Power of
Attorney of Katherine Leuschner

SWORN TO AND SUBSCRIBED before me on the 17th day of September, 2025.

ASHLEY ELISE SNYDER
Notary Public, State of Texas
Comm. Expires 02-28-2027
Notary ID 131884344

_____
Notary Public, State of Texas

# EXHIBIT A

Filed 3/2/2022 4:54 PM
J.A. (Andy) Harwell
County Clerk
McLennan County, Texas
By Cynthia Cunningham
Deputy

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA.

## CAUSE NO. 20220135PR1

| | | |
|---|---|---|
| IN THE ESTATE OF | § | IN THE COUNTY COURT AT LAW |
| | § | |
| DOROTHY J. SPANOS, | § | NUMBER _____ OF |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

### APPLICATION FOR APPOINTMENT OF A
### TEMPORARY ADMINISTRATOR AND OF A TRUST ADVISOR

COMES NOW, Applicant, Katherine Leuschner ("Katherine" or "Applicant") and pursuant to Texas Estates Code § 452.051(a) files this Application for Appointment of a Temporary Administrator in the Estate of Dorothy J. Spanos ("Dorothy" or "Decedent") and Trust Advisor of the Dorothy Spanos Living Trust and furnishes the following information to the Court for the appointment of a temporary administrator, respectfully showing the Court as follows:

### APPLICATION

1.      Applicant is domiciled in Waco, McLennan County, Texas. The last three numbers of Applicant's driver's license are 728, and the last three number of her social security number are 328.

2.      Decedent died on September 18, 2021, in Crawford, McLennan County, Texas, at the age of 86 years. The last three digits of Decedent's social security number are 332.

3.      The Court has jurisdiction and venue over this matter because Decedent was domiciled and had a fixed place of residence in McLennan County on the date of death.

4.      A necessity exists for the administration Decedent's estate. The interest of Decedent's estate requires immediate appointment of a temporary administrator because of issues detailed in the section below.

5.      Applicant respectfully requests that the Court appoint the Honorable Judge Robert Stem (retired) as the Temporary Administrator for the Estate of Dorothy J. Spanos and as Trust Advisor

---

Application for Appointment of Temporary Administrator and Trust Advisor                                   Page 1 of 12

for the Dorothy Spanos Living Trust. As a Texas resident and the Senior District Judge of Falls County, Judge Stem would be a suitable Temporary Administrator of the Estate and as the Trust Advisor. His office is located at 108 Bridge St., Marlin, Texas 76661. Tex. Estates Code § 256.052.

6. Decedent's Estate/Trust is composed of personal and real property described generally as real and personal property, cash, personal effects, personal and recreational vehicles, and household goods of a probable value in excess of $5,000,000.

7. Pursuant to Texas Estates Code §§ 452.002 and 256.054 and to the best of Applicant's knowledge, Decedent died testate. A will is not produced for probate because an original copy of the purported will ("the Will") is not under Applicant's control or in Applicant's possession. Based on the copy of the Will that Applicant has seen, Applicant believes the Will to be a pour-over will that gives all of Decedent's probate property to the Trustee of the Dorothy J. Spanos Living Trust. *See* Tex. Estates Code § 256.054. The current Trustee of the Trust is Frances Shelton, whose address is 11339 Cedar Rock Parkway, Crawford, Texas 76638. In the case of partial intestacy, Frances Shelton Applicant are Decedent's heirs.

8. No child or children were born to or adopted by Decedent after the date of the Will or any other will known to exist.

9. After the date of Decedent's Will, no marriage was dissolved.

10. Neither the Will nor any known prior Will of Decedent name either the State of Texas, a governmental agency of the State of Texas, or a charitable organization as a devisee.

11. The Honorable Judge Robert Stem (retired) is not disqualified by law from accepting letters of administration.

## INFORMATION IN SUPPORT OF THE NECESSITY OF ADMINISTRATION AND APPLICATION FOR THE APPOINTMENT OF A TEMPORARY ADMINISTRATOR AND TRUST ADVISOR

### Background Information

12.     For 56 years, Decedent was married to Nick L. Spanos ("Nick"). Applicant and her sister, Frances Shelton ("Frances"), are the only two children from the marriage of Decedent and Nick.

13.     Decedent and Nick operated a successful trucking business as well as businesses in the warehouse and aeronautical industries. Nick passed away in 2013. They built their home on 261 acres located at 228 Spanos Ranch Rd., Crawford, Texas 76638 ("the Crawford Ranch").

14.     On or about December 19, 2017, Decedent executed several estate planning documents, including but not limited to (i) a Statutory Durable Power of Attorney naming Frances as her agent, (ii) the Dorothy Spanos Living Trust[1] appointing Frances as Trustee in the event of Dorothy's incapacity or death ("the Trust"), and (iii) the Pour-Over Will of Dorothy J. Spanos ("the Will"), designating Frances as executor of Dorothy's estate.[2] Applicant is a named beneficiary under the Trust..

15.     On or about July 1, 2020, Decedent executed the First Amendment to the Dorothy Spanos Living Trust ("the Trust Amendment") that made several specific distributions to various beneficiaries of cash, personal property, and real property.

16.     Applicant is unaware of any further amendments to the Trust or codicils to the known Will.

17.     At this time, Applicant is not contesting the validity of the Will, the Trust, or its amendment, but rather seeks to have the Trust faithfully interpreted and the Trust and Estate properly administered.

---

[1] The Trust has several named beneficiaries, including Applicant, Frances, Rick, and several grandchildren and great-grandchildren of Decedent.
[2] Frances's husband, Rick, was named as a successor to Frances in the DPOA, Trust, and Will.

## Decedent's Trust Provides for Appointment of Trust Advisor

18.     As settlor of the Trust, Decedent expressly provided for the appointment of a Trust Advisor—a court-appointed neutral third party who is unrelated to any beneficiary—whose "purpose is to direct [Dorothy's] Trustee in matters concerning the trust, and to assist in achieving [Dorothy's] objectives as expressed by the other provisions of [her] estate plan if needed." Trust § 4.01–.02.

19.     As a beneficiary of the Trust, Applicant possesses the right to request the appointment of a Trust Advisor. *See* Trust § 4.02.

20.     A need exists for the appointment of a Trust Advisor because (i) the Trustee has failed to provide basic information about the Trust and its assets, (ii) there are disputes concerning the interpretation of specific distributions in the Trust Amendment, and (iii) concerns relating to the disposition of other real property, personal property, and use and/or wasting of trust assets as detailed herein.

## Trust and Will Control the Payment of Debts, Collection of Claims Owed to the Estate, and Disposition of Significant Assets,

21.     The Trust and the Will control the disposition of Decedent's considerable assets and the Estate is the administrative vehicle through which debts owed to or by the Estate are to be collected and paid. any liabilities that are owed by her estate.

22.     On information and belief, included among the Trust assets are multiple banks accounts, certificates of deposit, stock accounts, and multiple real property tracts.[3]

23.     Additionally, the Estate is owed a large debt by Frances' husband, Rick Shelton, in excess of $550,000. On information and belief, soon after Decedent's death, Rick became delinquent on payments for what is known as the "Warehouse Loan." Frances' failure to pursue payment created

---

[3] Applicant also recently learned about the existence of the Nick L. Spanos Family Trust of 1994 and Spanos Management LLC—both of which could have a bearing on what property is managed by the Trust, and through which Applicant may ultimately be a beneficiary. On information and belief, Frances is the trustee of the Nick L. Spanos Trust, but she has been less than forthcoming about the existence of these entities and their possible relationship to the Trust.

the appearance of self-dealing and favoritism toward her husband to the detriment of the other beneficiaries of the Trust and Estate.

24. When confronted by Applicant and other beneficiaries about non-payment of the Warehouse Loan, Frances merely provided copies of (possibly post-dated) checks Rick wrote without proof that those checks had been deposited, and Frances persists in refusing to provide information on the terms of the loan. The acts and omissions of Frances in this regard further underscore the need for the appointment of a Trust Advisor and Temporary Administrator to ascertain the details of the Warehouse Loan, including but to limited to the terms of the loan, the amount owed, the amortization schedule, and to ensure that timely payments are made without any favoritism or self-dealing.

**Applicant is Entitled to Transparency as well as Accurate and Complete Information**

25. The Trust provides that the "Trustee must provide an annual accounting to the Income Beneficiaries," which "must include the receipts, expenditures, and distributions of income and principal and the assets on hand for each accounting period." Further, the Trustee "must make the [T]rust's financial records and documents available to beneficiaries at reasonable times and upon reasonable notice for inspection." Trust § 12.13.

26. Despite repeated written and verbal requests from Applicant and other beneficiaries for Frances has failed to provide full and complete information regarding the Estate and Trust assets, the claims and/or debts against the Estate/Trust owed to creditors, or sufficient information regarding potential self-dealing transactions between Executor/Trustee Frances and Frances's husband, Rick, and has wasted Estate/Trust assets which she has a duty to preserve and manage for the beneficiaries.

27. As mentioned above, Frances failed to pursue payment from Rick on behalf of the Estate/Trust and persists in refusing to be transparent about the details concerning the Warehouse Loan and the assets of the Estate/Trust. **Frances marital relationship to a debtor of the Estate may also explain why she has failed to offer the Will for probate, which would require her to**

**provide a certified inventory and pursue claims owed to the Estate.** Frances' conflict of interest and unwillingness to act in this regard further undergirds the need for a Temporary Administrator and Trust Advisor.

28.     Frances also refuses to provide full and complete information regarding a check she wrote less than two weeks after Decedent passing from one of Decedent's checking accounts to Rick for more than $8,000.00. While this and other questionable transactions may ultimately prove to be legitimate, Frances has utterly failed to be transparent and her persistence in refusing to provide full accounting demonstrating that they are, and thus, creating the appearance of impropriety and self-dealing that necessitate oversight by a Temporary Administrator/Trust Advisor to guard against abuse and breach of the fiduciary duty Frances owes every beneficiary.

**Special Treatment for Family of Executor/Trustee; Waste of Estate/Trust Assets**

29.     Immediately following Decedent's death, Frances wasted no less than $48,000 in Estate/Trust assets by hiring private, 24-hour, in-person security guards at the Crawford house, which already had a security system and cameras. Frances has failed to provide any satisfactory explanation for the necessity in retaining 24-hour security for a residence that is otherwise in a safe neighborhood with no history of crime.

30.     Moreover, Frances continues to treat Applicant and other beneficiaries differently than she treats herself, her husband, and her and her husband's children. Frances excluded Applicant and her family members—who are named as beneficiaries in the Trust—from accessing Decedent's home and real property in Crawford, which they have always been permitted to use for recreation and leisure.

31.     Most egregiously is Frances' handling of a lot and membership at Escondido in Horseshoe Bay when compared to how she has treated Bobby Spanos, Applicant's son. Prior to Decedent's passing, Frances, acting in her capacity as co-Trustee, executed an admittedly invalid transfer to the Escondido lot and memberships that went to her and Rick under the Trust Amendment so that Rick

could play golf whenever he wanted. Conversely, on the date of Decedent's death, Frances kicked Bobby Spanos out of the residence on the Crawford Ranch that he lived in with Decedent and he has been denied free access to the Crawford Ranch since that time despite being entitled to 44 acres of the Crawford Ranch under the Trust Amendment.

32.     At the same time, Frances admittedly used Decedent's second home in Horseshoe Bay for her own benefit, and even allowed other family members to use it. Interestingly, Frances never saw fit to spend tens of thousands of dollars on security guards for this seldomly occupied vacation property, which only fuels Applicant's belief that the in-person security at the Crawford Ranch was hired to exclude Applicant and her family. The appointment of a Trust Advisor and Temporary Administrator is necessary to ensure that all beneficiaries have equal access to and enjoyment of the real property held by the Trust for all of their benefit and not for the exclusive use of the Trustee's family.

## Refusal to Honor Decedent's Express Wishes in Division and Use of Real Property

33.     Section 7.11 of the 2020 Trust Amendment provides explicit instructions for the division and distribution of Decedent's Crawford Ranch amongst the various beneficiaries. One such specific distribution requires that 39.322 acres, expressly identified by Decedent, to be sold with the proceeds evenly distributed amongst Frances (1/3), Applicant (1/3), and the Decedent's living grandchildren (1/3). Section 7.11 goes on to identify the acreage to be sold as: the existing house; RV Shed, and 39.322 acres including runway, front pasture, and pasture behind the home . . ." (see excerpt below).

> The existing house; RV Shed; Hanger; and 39.322 acres including runway, front pasture, and pasture behind the home to be sold with proceeds evenly distributed in the following manner:
>
> > 1/3 to Frances Shelton;
> >
> > 1/3 to Katherine Leuschner; and
> >
> > 1/3 to be evenly divided amongst all living grandchildren at the time of my death.
>
> Property passing under this Section passes free of any administrative expenses or death taxes.

34.    Despite these detailed instructions, Frances (or rather Rick[4]) hired 1519 Surveying & Engineering to gerrymander the distribution so as to package acreage to be distributed to her and her children/stepchildren that she then intends to sell as part of the 39.322 acres in order to maximize the amount of proceeds she and her children/step-children receive while harming Applicant and her children's future use and enjoyment of the Crawford Ranch. For example, the most recent survey cuts out 12.00 acres from the front pasture fronting Cedar Rock Parkway to be distributed to Frances' son, Nick, as well as prime property for Frances and her step-children Brandon and Brianna, leaving Applicant and her children with less than desirable acreage at the back of the property. See excerpt below and survey attached hereto as **Exhibit A.**



---

[4] The Survey clearly indicates that it was prepared for Rick Shelton despite him lacking any authority to act on behalf of the Trust.

35.     Because of Frances' refusal to honor a specific distribution in the Trust, a Trust Advisor is needed to ensure that Decedent's wishes are honored.

**Necessity for Temporary Administrator and Trust Advisor**

36.     As detailed above, a necessity exists for the administration of the Decedent's estate and the appointment of a Trust Advisor because estate assets and/or assets held by the Trust are in danger of being lost or wasted due to the mismanagement of Frances, the Executor/Trustee, and Frances has engaged in behaviors that, at a minimum, have the appearance of self-dealing and border on a breach of her fiduciary duty.

37.     Appointing a Temporary Administrator and Trust Advisor are in the best interest of Decedent's estate and Trust as well as Decedent's beneficiaries because it will ensure (i) that an impartial third party is in place to verify and determine the assets of the Estate and Trust, (ii) that the debts owed to and by the Estate/Trust are timely and appropriately paid, (iii) that the beneficiaries are treated equally, (iv) that assets are not wasted or used in an impermissible manner, and (v) that the wishes of the Decedent are honored.

38.     As mentioned above, Applicant respectfully requests that the Court appoint the Honorable Judge Robert Stem (retired) as the Temporary Administrator for the Estate of Dorothy J. Spanos and Trust Advisor for the Dorothy Spanos Living Trust.

**Duties and Powers of Temporary Administrator**

39.     A Temporary Administrator of the Estate should be given the following duties and powers:

    a.     To take charge and possession of any real property of the Estate that is not otherwise in the Trust.

    b.     To take possession of all accounts, funds, stocks, CDs, and other financial accounts subject to probate belonging to Decedent at the time of her death; to open new accounts and to be authorized signatory on those accounts;

    c.     To execute and deliver any instruments necessary for the sale, transfer or conveyance of any interest in real property owned by Decedent (including but not limited to contracts, deeds, closing statements, purchase and sale agreements, affidavits,

pleadings and other similar documents) at the time of death; to pay court costs and all necessary expenses and attorney's fees; to sue or defend lawsuits; and to exercise any rights necessary to protect Decedent's real and personal property;

d. To insure the Estate and its assets against liability in appropriate cases;

e. To insure the Estate property against fire, theft, and other hazards, as deemed necessary by the administrator;

f. To pay taxes, court costs, and bond premiums, as necessary;

g. To hire professionals to represent, advise, or assist the Temporary Administrator in performance of his duties;

h. To consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent;

i. To consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets;

j. To asses and determine all claims and debts owed to the Estate and/or to be paid by the Estate to its creditor; and

k. To file an Interim Inventory of the Estate of Decedent, within forty-five (45) days of appointment.

## Duties and Powers of the Trust Advisor

40. Pursuant to the terms of the Trust, a Trust Advisor has, among others, the following broad powers:

a. to demand a written accounting from the Trustee, review the accounting, and approve or reject the accounting;

b. to construe the terms of the Trust to settle any interpretation disputes;

c. to execute documents and direct the Trustee to execute and deliver documents;

d. to examine the trust records, including all documentation, inventories, and accountings; and

e. to employ professionals to advise or assist the Trust Advisor perform his duties.

Trust §§ 4.07, 4.13–.14.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Katherine respectfully requests that the Court make an immediate appointment of the Honorable Judge Robert Stem (retired) as Temporary Administrator of Decedent's estate and Trust Advisor of the Dorothy Spanos Living Trust to serve as such until discharged by order of this Court, for the issuance of Letters of Administration to the Temporary Administration, and for any such further relief to which she may be entitled.

Respectfully submitted,

**BEARD KULTGEN BROPHY
BOSTWICK & DICKSON, PLLC**

Julia B. Jurgensen
State Bar No. 24050328
Mark E. Firmin
State Bar No. 24099614
220 South 4th Street
Waco, Texas 76701
(254) 776-5500 – Telephone
(254) 776-3591 – Fax
jurgensen@thetexasfirm.com
firmin@thetexasfirm.com
**ATTORNEYS FOR APPLICANT**

## VERIFICATION

**STATE OF TEXAS**                          §
                                            §
**COUNTY OF McLENNAN**                       §

    Before me, the undersigned notary public, personally appeared Katherine Leuschner, known to me or proved to me through her Texas Driver's License, who after being duly sworn, upon her oath stated that she is the Applicant in the above case, that she has read the foregoing document, and the factual allegations contained therein are true and correct within her personal knowledge.



Katherine Leuschner

    SWORN TO AND SUBSCRIBED before me on the 2nd day of March , 2022.

SARAH JANE ROWELL
Notary Public
STATE OF TEXAS
ID#13182054-6
My Comm. Exp. Dec. 4, 2022

Notary Public, State of Texas



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Melissa Perez on behalf of Mark Firmin
Bar No. 24099614
perez@thetexasfirm.com
Envelope ID: 62243180
Status as of 3/3/2022 8:26 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Julia Jurgensen | | Jurgensen@thetexasfirm.com | 3/2/2022 4:54:39 PM | SENT |
| Melissa Perez | | Perez@thetexasfirm.com | 3/2/2022 4:54:39 PM | SENT |
| Sarah Rowell | | Rowell@thetexasfirm.com | 3/2/2022 4:54:39 PM | SENT |
| Mark Firmin | | firmin@thetexasfirm.com | 3/2/2022 4:54:39 PM | SENT |

# EXHIBIT B

| IN THE ESTATE OF | § | IN THE COUNTY COURT OF |
| | § | |
| DOROTHY J. SPANOS, | § | |
| | § | |
| DECEASED | § | McLENNAN COUNTY, TEXAS |

## AGREED ORDER APPROVING THE DISCHARGE OF TEMPORARY ADMINISTRATOR AND TERMINATION OF TEMPORARY ADMINISTRATION

Before this Court is the Agreed Order Approving the Discharge of Temporary Administrator, the Honorable Judge Robert Stem ("Judge Stem" or "Temporary Administrator"), and Termination of Temporary Administration, on behalf of the Estate of Dorothy J. Spanos, Deceased ("the Estate"). The parties to this Agreed Order have represented to the Court the following:

After diligently investigating the assets of the Estate and Dorothy Spanos Living Trust ("the Trust") in cooperation with Frances Shelton, an heir of the Estate and Trustee of the Trust, and Katherine Leuschner, the other heir of the Estate and a beneficiary of the Trust, the parties have been unable to discover debts owed by or to the Estate, or any assets remaining in the Estate beyond a few vehicles and watercraft, whose titles were not changed to the Trust prior to Decedent's passing.

The parties represent that Shelton and Leuschner are the only heirs of the Decedent and primary beneficiaries of the personal property under the terms the Trust and its amendment.

The parties further represent that based on their investigation to date it appears there is no necessity of administration at this time and that Shelton and Leuschner, in their respective capacities, should be authorized to transfer title to any titled assets via an Affidavit of Heirship or other legal means.

The parties further represent that Shelton and Leuschner have agreed that in the event assets or debts of the Estate requiring administration are discovered Shelton, as the Independent Executor named in the Pour-Over Will of Dorothy J. Spanos ("the Will"), will either offer the Will for probate,

probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective.

The parties further agree that because there is no necessity of administration at this time and no need for an inventory, that Judge Stem shall be discharged as Temporary Administrator, his bond released, and the Temporary Administration terminated.

The Court, therefore, makes the following findings:

1. By order of the Court, the Honorable Judge Robert Stem was duly appointed to serve as Temporary Administrator of the Estate of Dorothy J. Spanos and as Trust Advisor of the Dorothy Spanos Living Trust on March 8, 2022.

2. Judge Stem has served in the role of Temporary Administrator and Trust Advisor since his appointment and has acted in accordance with this Court's order and pursuant to the powers granted therein.

3. Judge Stem has made a diligent search to determine the assets of the Estate and Trust and debts owed to or by the Estate.

4. Judge Stem has determined, to the best of his knowledge, that the only assets that were not transferred to the Trust were a few vehicles and watercrafts that can be dealt with through an Affidavit of Heirship or other legal means.

5. Judge Stem has determined that there is no necessity for an administration of this Estate at this time.

6. Judge Stem has managed the Estate in compliance with the standards set forth for a temporary administrator in the Texas Estates Code.

7. Judge Stem has not paid any fees or expenses from the assets of the Estate.

8. Judge Stem is entitled to be paid compensation for his services as Temporary Administrator pursuant to Texas Estates Code § 352.002 and shall be paid for such services from assets in the Trust.

9. Judge Stem shall be discharged as Temporary Administrator and the Temporary Administration terminated.

10. Judge Stem shall continue to serve as the Trust Advisor of the Dorothy Spanos Living Trust in accordance with the Court's order of March 8, 2022 and pursuant to the terms of the Trust.

IT IS ORDERED THAT:

1. Judge Stem shall be paid for reasonable and necessary services rendered as Temporary Administrator from the assets of the Trust and the parties agree that Judge Stem shall carry his fees forward until his service as the Trust Advisor is complete at which such time he shall submit an invoice to the Trustee;

2. No necessity of administration exists at this time and that Leuschner and Shelton may execute any documents necessary to transfer title to any personal property or real property in their respective capacities;

3. That in the event an administration becomes necessary or other assts discovered, Shelton shall timely offer the Will for probate, probate the Will as a muniment of title, or record a small estate affidavit, whichever is most feasible and cost-effective; and

4. That Judge Stem is discharged as temporary administrator of the Estate and the Temporary Administration is terminated.

SIGNED, ENTERED, and ORDERED on this __18th__ day of May 2022.

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:

/s/ Robert Stem
Judge Robert Stem, Temporary Administrator


/s/ Mark E. Firmin
Attorney for Katherine Leuschner


/s/ Daniel A. Palmer
Attorney for Frances Shelton

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sarah Rowell on behalf of Mark Firmin
Bar No. 24099614
Rowell@thetexasfirm.com
Envelope ID: 64478595
Status as of 5/13/2022 10:36 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert Stem | | rstemfalls@gmail.com | 5/13/2022 10:18:36 AM | SENT |
| Daniel Palmer | | dpalmer@haleyolson.com | 5/13/2022 10:18:36 AM | SENT |
| Melissa Perez | | Perez@thetexasfirm.com | 5/13/2022 10:18:36 AM | SENT |
| Sarah Rowell | | Rowell@thetexasfirm.com | 5/13/2022 10:18:36 AM | SENT |
| Mark Firmin | | firmin@thetexasfirm.com | 5/13/2022 10:18:36 AM | SENT |
| Julia Jurgensen | | Jurgensen@thetexasfirm.com | 5/13/2022 10:18:36 AM | SENT |

Filed 9/26/2025 2:55 PM
J.A. (Andy) Harwell
County Clerk
McLennan County, Texas
By Cynthia Cunningham
Deputy

**CAUSE NO. 20220135PR1**

| IN THE ESTATE OF | § | IN THE COUNTY COURT |
|---|---|---|
| DOROTHY J. SPANOS, | § | AT LAW NO. 1 |
| DECEASED | § | MCLENNAN COUNTY, TEXAS |

### FRANCES SPANOS SHELTON'S RESPONSE AND OPPOSITION TO APPLICANT'S APPLICATION TO PROBATE WILL AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Frances Spanos Shelton ("Shelton") and files this Response and Opposition to Applicant Vernon Leuschner's ("Applicant"), as durable power of attorney for Katherine Leuschner ("Mrs. Leuschner"), Application to Probate Will and for Appointment of a Temporary Administrator ("Application"), and in furtherance thereof would respectfully show unto the Court as follows:

**I.**
### SUMMARY OF RESPONSE

The undisputed facts and well-founded caselaw clearly demonstrate that Applicant's Application should be denied in its entirety, rejecting both his request to probate the will of Dorothy Spanos ("Decedent's Will") and his request to appoint a temporary administrator. The Application to Probate Will should be denied for multiple reasons:

1) The Court has lacked jurisdiction over Decedent's estate since May 18, 2022, when it discharged the temporary administrator and concluded that no further administration was required;

2) Mrs. Leuschner indisputably waived her right to probate the Will on May 18, 2022, when she agreed that Shelton would offer Decedent's Will for probate only if subsequent events made it necessary; and

---

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**  **Page 1 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

3) Applicant has failed to satisfy the stringent requirements for probating a will under Texas law.

Likewise, Applicant's request to appoint a temporary administrator should be refused for several reasons:

1) Applicant failed to follow requirements under Texas law in seeking a temporary administration;

2) A temporary administration is unnecessary for Decedent's estate; and

3) Applicant's requested powers for a temporary administration are impermissibly overbroad.

As a result, and consistent with the facts and law, Shelton asks the Court to wholly deny Applicant's Application.

## II.
## BACKGROUND

Applicant filed his Application amid significant family conflict and omitted pertinent and material details in a manner calculated to secure a favorable ruling. To summarize the procedural history, Mrs. Leuschner, as an heir of Decedent, filed an application for Appointment of Temporary Administrator and Trust Advisor on March 2, 2022, in the County Court at Law of McLennan County, Texas, requesting the Court to appoint Retired Judge Robert Stem ("Judge Stem") as the Temporary Administrator of Decedent's estate and Trust Advisor of Decedent's Living Trust ("Trust").[1] *See* Exhibit A (Application for Appointment of a Temporary Administrator and of a Trust Advisor). On March 8, 2022, this Court entered an order appointing

---

[1] As mentioned, Applicant fails to inform the Court of the ongoing disputes at the trial and appellate court levels regarding whether this Court had jurisdiction over Decedent's Living Trust, including whether this Court had jurisdiction to appoint Judge Stem as Trust Advisor. *See* Exhibit B (Shelton's Mot. to Re-Affirm and/or Designate Trustee of the Dorothy Spanos Living Trust); Exhibit C (Brief of Appellant). Shelton incorporates the arguments from Exhibits B and C as if fully made herein and makes this Response subject to the relief sought related to Exhibits B and C.

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**      **Page 2 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

Judge Stem as Temporary Administrator and Trust Advisor until September 5, 2022. *See* Exhibit D (Order Granting Temporary Administration). On May 19, 2022, this Court entered an Agreed Order Approving the Discharge of Temporary Administrator and Termination of Temporary Administration, finding that there was no longer a necessity of administration. *See* Exhibit E (Agreed Order). Judge Stem, although no longer the Temporary Administrator, purportedly remained a Trust Advisor under the Order Granting Temporary Administration, and this appointment was purportedly extended by the court on September 1, 2022, just before its expiration, and seemingly without proper jurisdiction to do so. *Id.*; *see also* Ex. D.[2] Nearly three years later – on September 17, 2025 – Applicant filed his Application, requiring the instant Response.

## II.
## ARGUMENT & AUTHORITIES

Based on the law and evidence presented, Applicant's Application is without merit and lacks support to allow for the probate of Decedent's Will by Applicant or the appointment of a temporary administrator. Therefore, it must be denied, as detailed below.

### A.     The Application to Probate Will Should Be Denied.

As summarized above, the Application to Probate the Will should be denied due to a lack of jurisdiction, the Applicant's unquestionable waiver of the right to probate the Will, and the Applicant's noncompliance with the strict statutory requirements under Texas probate law.

#### i.     *The Court Lacks Jurisdiction.*

A fundamental legal principle—that the Court lacks jurisdiction—requires the denial of Shelton's Application. Applicant incorrectly argues that this Court has jurisdiction and Decedent's

---

[2] Notably, Shelton again refers this Court to the earlier-filed pleadings at the trial and appellate court levels regarding a lack of jurisdiction. *See* Exhibits B and C.

estate remains open based on certain language in this Court's May 18, 2022 Agreed Order, which terminated Judge Stem's temporary administration and granted Shelton the right to probate Decedent's Will, only if necessary. *See* Application at p. 2; *see also* Exhibit E. This claim is mistaken for several reasons.

First, the Court's jurisdiction ceased when Decedent's estate was closed on May 18, 2022. *See* Exhibit E. A court exercising probate jurisdiction under Texas Estates Code § 32.001 continues to have jurisdiction until the temporary administrator is discharged and the administration is closed. *Davey v. Margarett Jordan Royalties, Inc.*, No. 12-13-00002-CV, 2014 WL 3939669, at *4 (Tex. App.—Tyler Aug. 13, 2014, pet. denied) (citing Tex. Estates Code § 32.001(d)); *see also In re Blankenship*, 392 S.W.3d 249, 257-58 (Tex. App.—San Antonio 2012, pet. denied)("An estate is closed when the probate court signs an order discharging the administrator and closing the estate, or when all of the estate's property is distributed, the estate's debts are paid, and there is no need for further administration."); *Dean v. Gill*, 18 S.W.2d 784, 785 (Tex. App.—Texarkana 1929, no writ) (holding that an estate was closed out under the temporary administration when there was no need for a permanent administration).

In this case, the Court not only entered an Agreed Order discharging Judge Stem as the administrator, but also specifically included language that patently indicated the estate was closed:

> "After diligently investigating the assets of the Estate and Dorothy Spanos Living Trust ("the Trust") in cooperation with Frances Shelton, an heir of the Estate and Trustee of the Trust, and Mrs. Leuschner, the other heir of the Estate and a beneficiary of the Trust, the parties have been unable to discover debts owed by or to the Estate, or any assets remaining in the Estate beyond a few vehicles and watercraft, whose titles were not changed to the Trust prior to Decedent's passing."

Exhibit. E, at p. 1. The Court further found that, based on this investigation, it appeared that no further administration or inventory was necessary, and it authorized the heirs "to transfer title to

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**     **Page 4 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

any titled assets via an Affidavit of Heirship or other legal means." *Id*. at pp. 1-2. Accordingly, and based on the law, Decedent's estate was closed when the Court discharged the temporary administrator and terminated the temporary administration, found that all estate property had been distributed except for limited titled property that could be easily "dealt with," concluded that there were no identifiable debts, and acknowledged that there was no further need for an administration. *Id*.

Additionally, Applicant's reliance on this Court's order extending the purported appointment of Judge Stem as Trust Advisor is erroneous. *See* Application, p. 2. As already argued at length before the district court and appellate court, this Court's September 1, 2022 Order Extending Judge Stem's appointment as Trust Advisor is void because this Court lacked jurisdiction to appoint and/or extend Judge Stem's appointment as Trust Advisor. *See* Exhibits C, D and E. Any consideration of that void order is inappropriate because a void order has no force or effect, confers no rights, and is a mere nullity. *See Velasco v. Ayala*, 312 S.W.3d 783 (Tex. App.—Houston [1st Dist.] 2009); *In re Garza*, 126 S.W.3d 268 (Tex. App.—San Antonio 2003). In sum, the essential requirement of jurisdiction is absent in this case, requiring denial of the Application.

### ii. Katherine Leuschner Waived her Right to Probate the Decedent's Will.

Should the Court hold contrary to the overwhelming law and facts that Decedent's estate is open and it has retained jurisdiction over it, Applicant is still prohibited from offering Decedent's Will for probate on Mrs. Leuschner's behalf because she explicitly waived her right to probate the Will. "Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 778 (Tex. 2008). The elements of waiver include (1) an existing right, benefit, or advantage held by a

party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Id.* Although waiver is generally a question of fact, it becomes a question of law "when the surrounding facts and circumstances are undisputed." *In re General Elec. Capital Corp.,* 203 S.W.3d 314, 316 (Tex. 2006) (quoting *Jernigan v. Langley,* 111 S.W.3d 153, 156–57 (Tex. 2003)). "In determining if a waiver has in fact occurred, the court must examine the acts, words or conduct of the parties, and it must be 'unequivocally manifested' that it is the intent of the party to no longer assert the right." *Enterprise–Laredo Associates v. Hachar's, Inc.,* 839 S.W.2d 822, 836 (Tex. App.—San Antonio 1992), *writ denied,* 843 S.W.2d 476 (Tex. 1992). Here, the conditions for waiver have all been met.

The first requirement of waiver is met because Mrs. Leuschner had a right to offer Decedent's Will to probate as an interested person. *See* Tex. Estates Code §22.018(1)(stating that an interested person is an heir); *see also* Tex. Estates Code § 256.051(a)(stating that an interested person may file an application with the court for an order admitting the will to be probate). Shelton does not deny that Mrs. Leuschner initially had the right to probate the Will, but she was deprived of such right due to her own actions, as further discussed below.

Mrs. Leuschner's knowledge of her right to offer the Will for probate on March 9, 2022, satisfies the second requirement for waiver. In her Application for Temporary Administration and Appointment of a Trust Advisor, she stated that, "[a] will is not produced for probate because an original copy of the purported will ("the Will") is not under [her] control or in [her] possession." Exhibit A at p. 2. Clearly, Mrs. Leuschner knew she had a right to offer Decedent's Will for probate when she originally applied for a temporary administration and before she waived that right.

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**     **Page 6 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

Mrs. Leuschner's intent to relinquish her right to probate the Will meets the third and final element of waiver. The May 18, 2022 Agreed Order, which was not only executed by this Court, but was also agreed to as to form and substance by Mrs. Leuschner's attorney on her behalf, provides that "Shelton and Leuschner have agreed that in the event assets or debts of the Estate requiring administration are discovered *Shelton* . . . will either offer the Will for probate, probate the will as a muniment of title, or record a small estate affidavit, whichever is most feasible or cost-effective." Exhibit. E, at p. 1–2 (emphasis added). The Agreed Order's unambiguous language expresses Mrs. Leuschner's intent to waive her right to probate the Will, or, at a minimum, constitutes her intention to act inconsistently with that right.

Based on the above, Mrs. Leuschner unequivocally waived her right to probate Decedent's Will. Aside from Mrs. Leuschner's waiver, the Agreed Order clearly and specifically gave Shelton the sole right to probate the Will. Exhibit E, at p. 1-2. The Court certainly could have named Mrs. Leuschner and given her the right to probate the Will as well, but it simply did not. Because the elements of waiver have been satisfied, and because the Agreed Order was clear in its intent, the Applicant is barred from probating Decedent's Will, and the Application must be denied.[3]

### iii. Applicant Failed to Meet the Strict Requirements to Probate a Will Under Texas Law.

Crucially, the Applicant failed to satisfy several prerequisites for the probate of a will in Texas. A copy of the Will was not filed within the four-year statute of limitations, and Applicant failed to comply with the requirements for probating a Will that has not been produced. Notably, a Texas trial court may be found to have lacked jurisdiction to admit a will to probate if the

---

[3] Although Shelton believes Kathy Leuschner's waiver is clear, to the extent the Court believes there is a fact issue regarding waiver, this Court should permit Shelton that opportunity to take the oral deposition of Kathy Leuschner before making any ruling on any part of the Application.

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**      **Page 7 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

applicant's filing did not include all information mandated by the Texas Estates Code. *See e.g., Marrs v. Marquis*, 927 S.W.2d 304 (Tex. App.—El Paso 1996, no writ)(where applicant to probate will failed to meet statutory requirements in several respects and did not include required information, appellate court held that the trial court inappropriately admitted will to probate because an incomplete application did not establish the requisite jurisdiction to probate the will).

First and foremost, the Applicant did not file the Will before the statute of limitations expired. The Estates Code is clear that "a will may not be admitted to probate after the fourth anniversary of the testator's death unless it is shown by proof that the applicant for the probate of the will was not in default in failing to present the will for probate on or before the fourth anniversary of the testator's death," and that "[a]n applicant for the probate of a will shall file the will with the application if the will is in the applicant's control." Tex. Estates Code § 256.003(a); Tex. Estates Code § 256.053(a).

Here, the Applicant has control of the Will, or a copy thereof, having produced a copy of it in a separate lawsuit concerning the Dorothy Spanos Living Trust. *See* Ex. G (05.22.25 Documents Produced by Applicant, LEUSCNER 01626-01634). Applicant made a glaring and legally detrimental mistake by failing to file the Will with the Application, despite it plainly being in Applicant's control. Now, the four-year limitations period has passed, and the Court cannot exercise jurisdiction over Decedent's Will because it has not been filed with the Court. *See Watson v. Dingler*, 831 S.W.2d 834, 839 (Tex. App.—Houston [14th Dist.] 1992, writ denied)(where statutory requirements not met for probate of will, including failure to file will with application to probate will); *see also In re Estate of Hartwell*, No. 06-23-00054-CV, 2024 WL 105590 (Tex. App.—Texarkana 2024, no pet.)(where grandson who had copy of will from time it was executed

but did not file application for probate until ten years after testator's death could not rely on testator's comment that grandson's father would know what to do with will and father's assurances that he was handling will).

Furthermore, despite filing an Application without a copy of the Will, Applicant did not comply with Texas Estates Code § 256.054's additional requirements for probating a will which has not been produced. Predictably, Applicant failed to provide a reason for the Will's non-production. *See* Application; *see also* Tex. Estates Code § 256.054(1)(stating that "if an applicant for the probate of a will cannot produce the will in court, the application must state: (1) the reason the will cannot be produced…"). Applicant, of course, possesses a copy of the Will and therefore could not adequately explain the inability to produce the Will. Applicant also failed to state the name and address of "each person who would inherit as an heir of the testator in the absence of a valid will," as required by the law. *See* Tex. Estates Code § 256.054(3)(B); *see also* Application. Accordingly, the Application is deficient and the Court cannot probate Decedent's Will.

**B.      The Request to Appoint a Temporary Administrator Should be Denied.**

Applicant's request to appoint a temporary administrator should also be refused because Applicant has failed to follow all mandatory requirements under Texas law in seeking a temporary administration, a temporary administration is not necessary for Decedent's estate, and Applicant's requested powers for a temporary administration are impermissibly overbroad.

> ### i.      *Applicant Failed to Meet Precise Requirements for Appointment of Temporary Administrator Under Texas Law*

Even if the Court improperly exercises jurisdiction over the Decedent's estate and admits her Will to probate, it should deny Applicant's request for a temporary administrator because, like the Application to Probate the Will, the request for a temporary administrator is facially deficient

and does not satisfy the specific requirements for such an appointment under Texas law. Neither the Application nor Applicant's verification contains the information required under Texas Estates Code § 452.002.

Texas Estates Code § 452.002 requires an applicant seeking the appointment of a temporary administrator to include the information specified by §§ 256.052-.054. As discussed in detail above, Applicant has failed to provide such information, jeopardizing the jurisdiction of this Court. Specifically, Applicant failed to file a copy of the Will with the Application pursuant to Tex. Estates Code § 256.053(a), or to comply with Texas Estates Code § 256.054's additional requirements for probating a will that has not been produced. Applicant's request to appoint a temporary administrator is, therefore, insufficient and must be denied for that reason alone.

Texas Estates Code § 452.002 also requires the person seeking a temporary administration to submit an affidavit including: (1) the name, address, and interest of the applicant; (2) the facts showing an immediate necessity for the appointment of a temporary administrator; (3) listing the requested powers and duties of the temporary administrator; (4) stating that the applicant is entitled to letters of temporary administration and is not disqualified by law from serving as temporary administrator; and (5) describes the property that the applicant believes to be in the decedent's estate. *See* Tex. Estates Code § 452.002(b)(3). Applicant in this case did not do so, thereby committing a significant procedural error. Although the Application is verified, it does not include the additional and compulsory affidavit and is facially deficient. Because of the plain language of § 452.002, the Applicant cannot credibly argue that his verification of the Application is an affidavit. Section 452.002(b) provides that an application must be verified (452.002(b)(1)) **and** include an affidavit (452.002(b)(3)). Because these requirements are listed separately, an affidavit distinct from the verification is clearly required.

Even if the Court construes the verification attached to the Application to constitute an affidavit under the statute, Applicant is still not in compliance with the law because the verification and Application do not list the Applicant's address – one of the essential pieces of information that is statutorily required to be included in the affidavit. *See* Tex. Estates Code § 452.002(b)(3)(A). Applicant's omission of the statutorily required affidavit containing the required information is a fatal defect, and the Court must deny the request to appoint a temporary administrator.

### ii.    *Applicant Failed to Establish Necessity of Temporary Administration*

Applicant has also failed to establish a critical component of a request for a temporary administration – that a temporary administration is necessary. A temporary administration may be appropriate when a permanent administrator or executor is not representing the estate and there is (1) an immediate need for estate administration or (2) there is a pending contest to the probate of a will. *King v. King*, 230 S.W.2d 335, 339 (Tex. App.—Amarillo 1950, writ ref'd). A judge must determine that a temporary administration is in the interest of the estate. Tex. Estates Code § 452.001. "The purpose for empowering temporary administrators was to provide a mechanism by which the assets of an intestate decedent's estate could be preserved until delivered into the control of a permanent administrator." *Nelson v. Neal*, 787 S.W.2d 343, 346 (Tex. 1990) (citing *Ex parte Lindley*, 354 S.W.2d 364, 366 (Tex. 1962)). It was not intended to be a substitute for an executor or permanent administrator.

Here, Applicant has not established there is an immediate need for estate administration. Applicant asserts that, "a necessity exists for the administration of the Decedent's estate because estate assets are in danger of being lost or wasted due to limitations running on September 18, 2025." *See* Application at p. 5. It is not only doubtful but also unclear how limitations running

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**      **Page 11 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

places the only identified potential probate asset "in danger of being lost or wasted." The mere possibility of an unsubstantiated occurrence should not sway this Court to grant the Application.

Applicant further argues that, "Appointing a Temporary Administrator is in the best interest of Decedent's estate because it will ensure that an impartial third party is in place to verify and determine the assets of the Estate and timely transfer them to the Trust (ii) (sic) that assets are not wasted or used in an impermissible manner, and (ii) that the wishes of the Decedent are honored and her Will probated to effectuate those wishes." *Id.* Applicant's only argument against actually following the Decedent's wishes of naming Shelton as the executor is that Judge Stem, a man who admitted under oath that he has been untruthful with beneficiaries of the Decedent's Living Trust, purportedly removed Shelton as Trustee of the Trust for her alleged inability to be impartial.[4] Conveniently, Applicant failed to mention that Judge Stem explicitly represented to Shelton that, "[t]here wasn't a cause here to remove you for cause," that Applicant and others had been "throwing laser beams" at Shelton, and that Shelton was "put in a horrible situation through no fault of [her] own." Exhibit F (Audio Recording, at 51:38–44, 54:45–48, 54:57–55:01 (Dec. 5, 2023)). Applicant's only support for the accusation that Shelton is biased or otherwise unfit to act as executor is based entirely on Judge Stem's unreliable and conflicting statements.

Additionally, if Applicant is correct that the only remaining asset in Decedent's estate is worth approximately $40,000, the cost of re-investigating the probate assets would likely deplete them, rendering the effort pointless. *See* Application at pp. 2-3. Such proposed action is contrary to the best interests of the Estate. Applicant has pointed to no other circumstances that could overcome the fact that paying another temporary administrator to completely redo the investigation

---

[4] Shelton reiterates her arguments before the 414th District Court of McLennan County, Texas, and the 10th Court of Appeals, and incorporates them as if fully made herein. Exhibits B and C.

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**      **Page 12 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

that Judge Stem has already been paid to do would be detrimental to the Estate. For example, Applicant has not pointed to a need to defend a claim against the estate or to continue operating Decedent's business. *Nelson*, 787 S.W.2d at 343–44 (where Court held temporary administrator necessary because of need to defend wrongful death actions against estate); *Bandy v. First State Bank*, 835 S.W.2d 609, 611–12 (Tex. 1992)(where Court held temporary administrator needed to accomplish business purposes of estate such as taking charge of the business and its operations). Accordingly, the Court should deny Applicant's request for a temporary administrator.

### iii. The Temporary Administrator's Proposed Powers are Overbroad and the Court Lacks Jurisdiction over Some of the Requested Powers

The applicant's proposed scope of powers for the temporary administrator is impermissibly overbroad. *See* Application at p. 5-6. When a court appoints a temporary administrator, the temporary administrator's powers must be "**<u>limited as the circumstances of the case require</u>**." Tex. Estates Code § 452.001. "[T]he temporary administrator is a creature of the statutes with only such limited powers as the court deems necessary. His powers are shaped by the probate court to fit the needs of each particular case. He has no vested interest or right in the position. His principal object is to preserve the estate until it can pass into the hands of a person fully authorized to administer it for the benefit of creditors, heirs, devisees and legatees." *Ex parte Lindley*, 354 S.W.2d at 366 (citing *Dull v. Drake*, 4 S.W. 364 (Tex. 1887); *Fenimore v. Youngs*, 26 S.W.2d 195 (Tex. 1930)).

Here, Applicant requests that the temporary administrator be granted the power to "consent to and obtain business and financial records, including business records of Spanos Management, LLC, records from financial institutions, records from attorneys for the Decedent and medical records of the Decedent." *See* Application at p. 6. This request is excessive and does not fit the needs of this particular case, as the law commands. Specifically, Applicant has identified one

possible probate asset – a membership interest in an LLC and potentially a bank account of the LLC – yet the Applicant requests that a temporary administrator have the power to obtain Decedent's medical records. *See* Application at pp. 2-3, 6. Decedent's medical records are irrelevant to the determination of whether her interest in Spanos Management, LLC, and its associated bank account constitute probate assets.

Applicant also requests that the temporary administrator have the power to "consent to and obtain records of the Nick L. Spanos Family Trust 1994 to determine the relationship between the two trusts and other assets." *See* Application at p. 6. Bewilderingly, by this request, Applicant attempts to walk this Court into further error by inappropriately exercising jurisdiction over the Nick L. Spanos Family Trust 1994 and the Dorothy Spanos Living Trust. The Court does not have jurisdiction over either of the trusts, a fact clearly established in Shelton's Motion to Re-Affirm and/or Designate Trustee of the Dorothy Spanos Living Trust, and there is no means for the Court to obtain it. *See* Exhibits B and C. Additionally, because the Decedent's Will is a pour-over will that directs all probate assets into the Dorothy Spanos Living Trust, the Nick L. Spanos Family Trust 1994 has no plausible connection to the Will, and there is no reason for a temporary administrator to have the power to seek information pertaining to it.

Applicant has requested impermissibly overbroad powers for a temporary administrator, and they are not supported by the circumstances of the case, as the law requires. Accordingly, in the unlikely event the Court exceeds its authority and jurisdiction and appoints a temporary administrator, it should deny Applicant's request to grant the temporary administrator the above-discussed powers, and instead, should carefully tailor any powers to the facts and nature of this proceeding.

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**     **Page 14 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

## III.
## CONCLUSION

Applicant's Application to Probate Will and for Appointment of a Temporary Administrator should be denied for a host of reasons. The Application to Probate Will should be denied because: 1) Most importantly, the Court has lacked jurisdiction over this cause since the estate was closed when the temporary administrator was discharged on May 18, 2022, and the Court held there was no need for further administration; 2) Mrs. Leuschner's waiver of her right to offer Decedent's Will for probate and her agreement that Shelton solely has such right prohibits Applicant from probating the Will; and 3) Applicant failed to comply with the strict statutory requirements for offering a will for probate.

Similarly, Applicant's request to appoint a temporary administrator should be refused because: 1) Applicant failed to follow the precise requirements under Texas law in seeking a temporary administration; 2) A temporary administration is not necessary for Decedent's estate; and 3) Applicant's requested powers for a temporary administration are impermissibly overbroad.

Hence, Shelton asks the Court to entirely deny Applicant's Application.

## IV.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Shelton asks the court to deny Applicant Vernon Leuschner's, as the durable power of attorney for Katherine Leuschner, Application to Probate Will and for Appointment of a Temporary Administrator, and to grant Shelton any and all other relief, in law and in equity, to which she may be justly entitled.

**RESPONSE AND OPPOSITION TO APPLICATION TO PROBATE WILL**       **Page 15 of 16**
**AND FOR APPOINTMENT OF TEMPORARY ADMINISTRATOR**
*In the Estate of Dorothy A. Spanos, Deceased*

Respectfully submitted,

**CHERRY JOHNSON SIEGMUND JAMES, PC**
7901 Fish Pond Road, 2nd Floor
Waco, Texas   76710
Telephone:  (254) 732-2242
Facsimile:   (866) 627-3509

BY:   /s/ Craig D. Cherry
**CRAIG D. CHERRY**
State Bar No. 24012419
Email:  ccherry@cjsjlaw.com
**RYAN C. JOHNSON**
State Bar No. 24048574
Email: rjohnson@cjsjlaw.com
**SCOTT H. JAMES**
State Bar No. 24037848
Email: sjames@cjsjlaw.com
**M. KATIE QUILLEN**
State Bar No. 24133047
Email: kquillen@cjsjlaw.com

**ATTORNEYS FOR FRANCES SHELTON**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon the

parties, or the attorney(s) of record for all parties to the above cause in accordance with the Texas

Rules of Civil Procedure on this 26th day of September, 2025.

/s/ *Craig D. Cherry*
CRAIG D. CHERRY

# TAB B

# Texas Statutes Annotated - 2024

| Vernon's Texas Statutes and Codes Annotated |
| --- |
| Civil Practice and Remedies Code (Refs & Annos) |
| Title 3. Extraordinary Remedies |
| Chapter 64. Receivership |
| Subchapter A. General Provisions |

V.T.C.A., Civil Practice & Remedies Code § 64.001

§ 64.001. Availability of Remedy

Currentness

(a) A court of competent jurisdiction may appoint a receiver:

(1) in an action by a vendor to vacate a fraudulent purchase of property;

(2) in an action by a creditor to subject any property or fund to his claim;

(3) in an action between partners or others jointly owning or interested in any property or fund;

(4) in an action by a mortgagee for the foreclosure of the mortgage and sale of the mortgaged property;

(5) for a corporation that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights; or

(6) in any other case in which a receiver may be appointed under the rules of equity.

(b) Under Subsection (a)(1), (2), or (3), the receiver may be appointed on the application of the plaintiff in the action or another party. The party must have a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured.

(c) Under Subsection (a)(4), the court may appoint a receiver only if:

(1) it appears that the mortgaged property is in danger of being lost, removed, or materially injured; or

(2) the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt.

(d) A court having family law jurisdiction or a probate court located in the county in which a missing person, as defined by Article 63.001, Code of Criminal Procedure, resides or, if the missing person is not a resident of this state, located in the county in which the majority of the property of a missing person's estate is located may, on the court's own motion or on the application of an interested party, appoint a receiver for the missing person if:

(1) it appears that the estate of the missing person is in danger of injury, loss, or waste; and

(2) the estate of the missing person is in need of a representative.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1997, 75th Leg., ch. 1376, § 4, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 1081, §§ 1, 3, eff. Sept. 1, 1999.

HISTORICAL AND STATUTORY NOTES

2008 Main Volume

Acts 1997, 75th Leg., ch. 1376, in subsec. (a), added new subd. (6), redesignated former subd. (6) as subd. (7), and made other nonsubstantive changes.

Section 6 of Acts 1997, 75th Leg., ch. 1376 provides:

"This Act takes effect September 1, 1997, and applies only to a proceeding for receivership of the estate of a missing person that is instituted on or after that date. A proceeding for receivership of the estate of a missing person that is instituted before the effective date of this Act is governed by the law in effect on the date on which the proceeding was instituted, and the former law is continued in effect for that purpose."

Acts 1999, 76th Leg., ch. 1081 added subsec. (d); in subsec. (a)(5), inserted "or"; deleted former subsec. (a)(6); redesignated former subsec. (a)(7) as subsec. (a)(6). Prior to amendment, subsec. (a)(6) read:

| Vernon's Texas Statutes and Codes Annotated |
| --- |
| Civil Practice and Remedies Code (Refs & Annos) |
| Title 3. Extraordinary Remedies |
| Chapter 64. Receivership (Refs & Annos) |
| Subchapter A. General Provisions |

V.T.C.A., Civil Practice & Remedies Code § 64.001

§ 64.001. Availability of Remedy

Currentness

(a) A court of competent jurisdiction may appoint a receiver:

(1) in an action by a vendor to vacate a fraudulent purchase of property;

(2) in an action by a creditor to subject any property or fund to the creditor's claim;

(3) in an action between partners or others jointly owning or interested in any property or fund;

(4) in an action by a mortgagee for the foreclosure of the mortgage and sale of the mortgaged property;

(5) for a corporation that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights;

<Text of (a)(6) as added by Acts 2025, 89th Leg., ch. 73 (S.B. 2034), § 1>

(6) for a single-source continuum contractor as provided by Subchapter B-2, Chapter 264, Family Code; or

<Text of (a)(6) as added by Acts 2025, 89th Leg., ch. 956 (S.B. 17), § 2>

(6) in an action by the attorney general under Subchapter H, Chapter 5, Property Code; or

(7) in any other case in which a receiver may be appointed under the rules of equity.

(b) Under Subsection (a)(1), (2), or (3), the receiver may be appointed on the application of the plaintiff in the action or another party. The party must have a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured.

(c) Under Subsection (a)(4), the court may appoint a receiver only if:

(1) it appears that the mortgaged property is in danger of being lost, removed, or materially injured; or

(2) the condition of the mortgage has not been performed and the property is probably insufficient to discharge the mortgage debt.

(d) A court having family law jurisdiction or a probate court located in the county in which a missing person, as defined by Article 63.001, Code of Criminal Procedure, resides or, if the missing person is not a resident of this state, located in the county in which the majority of the property of a missing person's estate is located may, on the court's own motion or on the application of an interested party, appoint a receiver for the missing person if:

(1) it appears that the estate of the missing person is in danger of injury, loss, or waste; and

(2) the estate of the missing person is in need of a representative.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 1997, 75th Leg., ch. 1376, § 4, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 1081, §§ 1, 3, eff. Sept. 1, 1999; Acts 2025, 89th Leg., ch. 73 (S.B. 2034), § 1, eff. May 19, 2025; Acts 2025, 89th Leg., ch. 956 (S.B. 17), § 2, eff. Sept. 1, 2025.

Notes of Decisions (587)

**O'CONNOR'S CROSS REFERENCES**
See also Tex. Bus. Orgs. Code §§11.401-11.414; *O'Connor's Fam. Law Handbook*, "Temporary Orders," ch. 5-D, §1 et seq.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelly Blackburn on behalf of William Richard Thompson
Bar No. 788537
efile@dpslawgroup.com
Envelope ID: 106411601
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Reply Brief
Status as of 10/3/2025 10:40 AM CST

Associated Case Party: FrancesSpanosShelton

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kirk Pittard | | kpittard@dpslawgroup.com | 10/3/2025 10:25:47 AM | SENT |
| Craig Cherry | 24012419 | ccherry@cjsjlaw.com | 10/3/2025 10:25:47 AM | SENT |
| Rick Thompson | | rthompson@dpslawgroup.com | 10/3/2025 10:25:47 AM | SENT |
| Kelli Bassett | | kbassett@cjsjlaw.com | 10/3/2025 10:25:47 AM | SENT |
| Scott James | | sjames@cjsjlaw.com | 10/3/2025 10:25:47 AM | SENT |
| Michala Quillen | | kquillen@cjsjlaw.com | 10/3/2025 10:25:47 AM | SENT |
| Ryan Johnson | | rjohnson@cjsjlaw.com | 10/3/2025 10:25:47 AM | SENT |

Associated Case Party: Vernon Leuschner

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Angus McSwain | 13861100 | mcswain@thetexasfirm.com | 10/3/2025 10:25:47 AM | SENT |
| Mark Firmin | 24099614 | firmin@thetexasfirm.com | 10/3/2025 10:25:47 AM | SENT |
| Sameer AHashmi | | hashmi@thetexasfirm.com | 10/3/2025 10:25:47 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jenn Haring | | jharing@cjsjlaw.com | 10/3/2025 10:25:47 AM | SENT |
| Sarah Rowell | | rowell@thetexasfirm.com | 10/3/2025 10:25:47 AM | SENT |
| Ashley Snyder | | snyder@thetexasfirm.com | 10/3/2025 10:25:47 AM | SENT |
| Kelly Blackburn | | efile@dpslawgroup.com | 10/3/2025 10:25:47 AM | SENT |
| Kiley Coats | | coats@thetexasfirm.com | 10/3/2025 10:25:47 AM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kelly Blackburn on behalf of William Richard Thompson
Bar No. 788537
efile@dpslawgroup.com
Envelope ID: 106411601
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Reply Brief
Status as of 10/3/2025 10:40 AM CST

Associated Case Party: RobertLeeSpanos

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James Dunnam | 6258010 | jimdunnam@dunnamlaw.com | 10/3/2025 10:25:47 AM | SENT |
| Mason Dunnam | | masondunnam@dunnamlaw.com | 10/3/2025 10:25:47 AM | SENT |
| Andrea Mehta | | andreamehta@dunnamlaw.com | 10/3/2025 10:25:47 AM | SENT |